No. 26-2113

---

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE EIGHTH CIRCUIT

---

ALEKSEI MOROZOV,

Petitioner-Appellee,

v.

FIELD OFFICE DIRECTOR, U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT; UNITED STATES ATTORNEY FOR THE DISTRICT OF SOUTH DAKOTA,

Respondents-Appellants,

---

On Appeal from the United States District Court for the District of South Dakota
No. 5:26-cv-05030-RAL (Lange, C.J.)

---

## RESPONDENTS-APPELLANTS' MOTION TO EXPEDITE BRIEFING AND ORAL ARGUMENT

---

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

DREW C. ENSIGN
Deputy Assistant Attorney General

BENJAMIN HAYES
Senior Counsel to the Assistant
Attorney General

ALLISON FRAYER
Senior Litigation Counsel
Office of Immigration Litigation

ANTHONY J. NARDI
Trial Attorney
Office of Immigration Litigation
PO Box 868, Ben Franklin Station
Washington, D.C. 20044
Tel: (202) 880-0258

Counsel for Respondent-Appellants

## INTRODUCTION

Respondents-Appellants ("Respondents") request that the Court set an expedited schedule for briefing and oral argument in this case. The petitioner is an alien who is present in the United States without admission and has been detained by the Department of Homeland Security ("DHS") under 8 U.S.C. § 1225(b)(2)(A). In *Avila v. Bondi*, 170 F.4th 1128 (8th Cir. 2026), this Court held that § 1225(b)(2)(A) mandates the detention of aliens, like petitioner, who are present in the United States without admission. Although the district court below acknowledged *Avila*'s statutory holding, it held that detention under § 1225(b)(2)(A) without a hearing to assess flight risk or dangerousness violates the Fifth Amendment's Due Process Clause. Because the legal issue raised is both highly important and recurring, the Court should set the following proposed expedited briefing schedule:

**Opening Brief/Appendix**: July 7, 2026

**Answering Brief**: August 6, 2026

**Reply Brief**: August 20, 2026

## BACKGROUND

Aleksei Morozov ("Morozov") is a citizen of Russia, who entered the United States in 2023 at a port of entry and was granted a one-year term of humanitarian parole, which expired on February 3, 2024. *See* District

Court's Memo. Opinion, Ex. A at 1-3. Following the expiration of his parole, Morozov's immigration status reverted to that of an unadmitted, unparoled applicant for admission. *See* 8 U.S.C. § 1182(d)(5)(A); 8 C.F.R. § 212.5(e)(1)(ii), (2)(i).

On November 13, 2025, South Dakota Highway Patrol encountered Morozov and subsequently turned him over to U.S. Immigration and Customs Enforcement (ICE). Deportation Officer Decl., Ex. B at 1-2. He was charged under 8 U.S.C. § 1182(a)(7)(A)(i) as an alien who was not in possession of a valid entry document at the time of application for admission. Immigration Judge Order, Ex. C at 1. He was then detained under 8 U.S.C. § 1225(b)(2). U.S. Resp. to Pet'r Habeas, Ex. D at 3.

On March 30, 2026, Morozov filed a habeas petition in the United States District Court for the District of South Dakota. *See generally* Morozov Habeas Petition, Ex. E. On April 27, 2026, the district court held that Morozov's detention violated due process. District Court's Memo. Opinion, Ex. A at 7-13. The Court ordered that Morozov be immediately released. District Court's Memo. Opinion, Ex. A at 14. Respondents complied with the district court's order. Notice of Release, Ex. F.

Appellate Case: 26-2113    Page: 3    Date Filed: 06/24/2026 Entry ID: 5653978

# ARGUMENT

## I. The Court should Expedite Briefing and Oral Argument

The Court should expedite briefing and oral argument in this appeal. The district court in this appeal held that the detention authority in 8 U.S.C. § 1225(b)(2)(A), as interpreted by this Court in *Avila*, is unconstitutional. A district court order holding unconstitutional a duly enacted federal statute is undoubtedly an issue of significance warranting expedited review. *Accord Maryland v. King*, 567 U.S. 1301, 1303 (2012) (recognizing that the government "suffers a form of irreparable injury" "[a]ny time [it] is enjoined by a court from effectuating statutes enacted by representatives of its people.") (quoting *New Motor Vehicle Bd. of Cal. v. Orrin W. Fox Co.*, 434 U.S. 1345, 1351 (1977) (Rehnquist, J., in chambers)).

The important issue is also recurring. District courts within this Circuit have issued numerous orders holding that mandatory detention under § 1225(b)(2)(A) violates due process. And there is no end in sight. This Court's expedited review is thus urgently needed to clarify the law of this Circuit on this important issue of constitutional law, and to relieve the burden imposed on district courts and U.S. Attorneys Offices from the constant flow of habeas petitions implicating the constitutionality of § 1225(b)(2)(A). Faced with a similar dynamic involving this exact same

3

Appellate Case: 26-2113    Page: 4    Date Filed: 06/24/2026 Entry ID: 5653978

legal issue, the Fifth Circuit ordered full merits briefing an oral argument in less than a month. *See Sosnava Rodriguez v. Ortega*, No. 26-50183 (5th Cir.).

Accordingly, Respondents-Appellants respectfully request that the Court set the following briefing schedule for the appeal:

**Opening Brief/Appendix**: July 7, 2026

**Answering Brief**: August 6, 2026

**Reply Brief**: August 20, 2026

In addition, Respondents-Appellants request that the Court expedite oral argument in this case.

Undersigned counsel contacted counsel for Petitioner-Appellee, Jim Leach, on June 16, 2026, and Mr. Leach indicated that he did not consent to the present motion.

Appellate Case: 26-2113    Page: 5    Date Filed: 06/24/2026 Entry ID: 5653978

# CONCLUSION

For the foregoing reasons, the Court should grant Respondents-Appellants' motion to expedite and enter the proposed expedited schedule for briefing and oral argument.

Dated: June 24, 2026

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General

DREW C. ENSIGN
Deputy Assistant Attorney General

BENJAMIN HAYES
Senior Counsel to the Assistant
  Attorney General

ALLISON FRAYER
Senior Litigation Counsel

s/ *Anthony J. Nardi*
ANTHONY J. NARDI
Trial Attorney
Office of Immigration Litigation
Civil Division, U.S. Department of Justice
P.O. Box 878, Ben Franklin Station
Washington, DC 20044
(202) 880-0258
Anthony.j.nardi@usdoj.gov

5

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to Federal Rule of Appellate Procedure 27(d)(2)(A), I certify that the foregoing was prepared using 14-point Georgia type, is proportionally spaced and contains 1,015 words.

/s/ Anthony J. Nardi
ANTHONY J. NARDI
Trial Attorney
U.S. Department of Justice

June 24, 2026          Attorney for Respondents-Appellants

# CERTIFICATE OF SERVICE

I certify that on June 24, 2026, I filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Eighth Circuit by using the appellate CM/ECF system. Counsel for Petitioner-Appellee is a registered CM/ECF user, and service will be accomplished using the CM/ECF system.

/s/ Anthony J. Nardi
ANTHONY J. NARDI
Trial Attorney
U.S. Department of Justice

# Exhibit A

Appellate Case: 26-2113　Page: 9　Date Filed: 06/24/2026 Entry ID: 5653978

UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | |
|---|---|
| ALEKSEI M., | 5:26-CV-05030-RAL |
| Plaintiff, | |
| vs. | OPINION AND ORDER GRANTING WRIT OF HABEAS CORPUS AND ORDERING RELEASE |
| WARDEN, LAWRENCE COUNTY JAIL; FIELD OFFICE DIRECTOR, U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT; AND UNITED STATES ATTORNEY FOR THE DISTRICT OF SOUTH DAKOTA, | |
| Defendants. | |

On March 30, 2026, Petitioner Aleksei M. filed a Verified Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241. Doc. 1. The Department of Homeland Security's Immigration and Customs Enforcement (ICE) has detained Aleksei M. since November 13, 2025, after he was stopped for speeding in South Dakota. Aleksei M. is a citizen of Russia who has resided in the United States for more than three years after receiving humanitarian parole and being granted employment authorization until 2029. Aleksei M. claims the Government has wrongfully detained him without a bond hearing in violation of the Due Process Clause of the Fifth Amendment. Id. For the reasons explained below, the Petition is granted.

## I.    Background

On February 4, 2023, Aleksei M., requesting asylum based on fear of political persecution, arrived with his wife and minor child in the United States and presented themselves at the Gateway ·

1

Appellate Case: 26-2113   Page: 10   Date Filed: 06/24/2026 Entry ID: 5653978

International Bridge in Brownsville, Texas. Doc. 14 ¶ 4; Doc. 14-3; Doc. 1-1 at 2, 4–15, 37–38. Aleksei M. and his family are citizens of Russia, and Aleksei M. claims that his support for the pro-democracy movement and for Alexei Navalny in particular exposes him to prosecution in Russia. Doc. 1 at 2; Doc. 1-1 at 8. At the port of entry, CBP Officer Alfredo Chavez paroled Aleksei M. and his family into the United States pending a 240 hearing and gave Aleksei M. a Notice to Appear (Form I-862) with an immigration court date of April 21, 2027. Doc. 14-1 at 1; Doc. 14-3 (listing disposition as Notice to Appear); see also Doc. 1-1 at 16 (listing hearing date as April 21, 2027). The most recent I-94 form of record showed that Aleksei M. had been admitted on humanitarian parole until February 3, 2024. Doc. 1-1 at 2; see also id. at 4 (listing status expiring as February 3, 2024).

On May 3, 2023, an individual hearing was scheduled for March 18, 2026. Doc. 1-1 at 25. Aleksei M. applied for asylum, and this application was filed by Aleksei M.'s first immigration attorney, Irina Kameristy, on December 14, 2023. Id. at 16; Doc. 18-2. Aleksei M. claims in his Petition that Kameristy "submitted an incomplete and substantively blank Form 1589, leaving the [initial] asylum application without factual information or supporting evidence required for adjudication." Doc. 1 at 3; see Doc. 18-2.

After the United States paroled Aleksei M. and his family, they resided in Texas. Doc. 1 at 2; Doc. 1-1 at 3. Aleksei M. has a history of compliance with DHS and no criminal history. Doc. 1. Since arriving in the United States, Aleksei M. and his family have been very active in their community, as shown in multiple letters of record. Doc. 1-1 at 28–38; Doc. 18-5. On March 27, 2023, Aleksei M. applied for employment authorization, which was approved on June 13, 2023. Doc. 1-1 at 3. This initial employment authorization was valid from June 13, 2023, to

Appellate Case: 26-2113    Page: 11    Date Filed: 06/24/2026 Entry ID: 5653978

February 3, 2024.[1] Id. On July 24, 2024, Aleksei M. and his family formally notified the United States through counsel that they had moved to Oswego, Illinois. Doc. 18-3. On August 20, 2024, Illinois issued Aleksei M. a driver's license, which expires on January 16, 2029. Doc. 18-4.

On January 17, 2025, the United States extended Aleksei M.'s work authorization until January 16, 2029. Doc. 18-1. The United States issued Aleksei M. a card documenting his work authorization and other identification information. Id. Self-employed, Aleksei M. delivers light freight throughout the United States. Doc. 18-5 at 59; Doc. 18-14. While on humanitarian parole, Aleksei also filed his 2024 tax return. Doc. 1-1 at 26–27. On June 3, 2025, the United States notified Aleksei M. that an in-person hearing would be held in Chicago on November 16, 2026. Doc. 18-6.[2]

On November 13, 2025, Aleksei M. was driving in the course of his employment when the South Dakota Highway Patrol stopped him for speeding in Belle Fourche, South Dakota. Doc. 1 at 2; Doc. 14 ¶ 5; Doc. 17 at 4. When stopped, Aleksei M. had his employment authorization and driver's license on his person. Doc. 17 at 4. The Highway Patrol Officer contacted ICE and then arrested Aleksei M. under 287g authority. Doc. 1 at 2; Doc. 14 ¶ 5; Doc. 17 at 4. ICE Deportation Officer Jason Burchett took custody of Aleksei M. and transported him to the ICE Office in Rapid City, South Dakota. Doc. 14 ¶ 5; Doc. 14-4.

---

[1] Aleksei M. is the sole financial provider for his family and notes his wife has significant health issues. Doc. 1 at 2. This does not affect the due process analysis.

[2] It is unclear from the record, but it appears this hearing was scheduled regarding Aleksei M.'s asylum application unlike the previously scheduled March 18, 2026 hearing, which was docketed before Aleksei M.'s attorney filed his first asylum application in December 2023.

3

There were two I-200 warrants provided to this Court.[3]  The first I-200 warrant is dated November 13, 2025, and signed by Chad Fischer.[4]  Doc. 18-7; see Doc. 14-4.  This first warrant reads that Fischer "ha[s] determined that there is probable cause to believe that Aleksei [M.] is removable from the United States."  Id.  Fischer filled in Aleksei M.'s name and signed and dated the warrant.  Id.  Fischer checked none of the boxes on the form for a determination of probable cause nor wrote anything in for potential grounds.  Id.  On November 14, 2025, there was a second, typed I-200 warrant.  Doc. 14-2.  On this warrant, Fischer's name is typed though not signed.  Id.  The second warrant included two bases for probable cause:

> [(1)] the pendency of ongoing removal proceedings against the subject . . . [and (2)] biometric confirmation of the subject's identity and a records check of federal databases that affirmatively indicate, by themselves or in addition to other reliable information, that the subject either lacks immigration status or notwithstanding such status is removable under U.S. immigration law.

Id.  Burchett served Aleksei M. with both warrants.  Id.; Doc. 18-7.

On November 14, 2025, Burchett prepared an I-213 Form.  Doc. 14-4.  On that form, Burchett described Aleksei M. as having a negative immigration record, being unemployed or retired, as "an alien present without admission or parole," and as "immigrant without an immigrant visa."  Id.  The form also stated that Aleksei M. "makes no claim to U.S. citizenship or current lawful immigration status and is an alien without an immigrant visa.  [Aleksei M.] is amenable an alien illegally in the United States without having been admitted or paroled."  Id.  The same document included information that Aleksei M. had been paroled into the United States for a year

---

[3] The Government, in its Response, only attached the second unsigned I-200 warrant and omitted the first.  See Docs. 14, 14-2.

[4] Fischer is not identified or discussed in the response and attached paperwork submitted by the Government—his name does not appear in the narrative of Aleksei M.'s arrest submitted by ICE other than on a signature line as an examining officer.  See Doc. 18-7; Doc. 14-4.

4

in February 2023 after lawfully presenting himself at the Gateway International Bridge.  Id. Aleksei M. was held without bond and called his attorney.  Id.

Sometime in November 2025, Aleksei M. retained new immigration counsel, Nataliya Galvin, who prepared and filed a new and properly completed Form I-589 application alleging good cause for asylum on behalf of Aleksei M. on December 4, 2025.  Doc. 1 at 3; Doc. 18-9; Doc. 18-10.  The Government acknowledged receipt of the asylum fee a week later.  Doc. 18-11. On January 7, 2026, Galvin filed hundreds of pages of documents, including letters, a declaration, an expert legal opinion, photographs, and text messages supporting Aleksei M.'s application and reasons for fearing political persecution due to his pro-democracy activities in Russia.  Doc. 18-5.

On March 18, 2026, Aleksei had his Individual Hearing before an Immigration Judge.  Doc. 1 at 3; Doc. 13-1.  The Immigration Judge found Aleksei M. inadmissible under the Immigration and Nationality Act (INA), denied Aleksei M.'s claim for asylum, denied Withholding of Removal, denied Deferral of Removal, ordered him removed to Russia, and advised him of his appeal rights.  Doc. 13-1.  Aleksei M. adds that in denying his application, the Immigration Judge "cit[ed] the absence of a complete asylum application and supporting documents, which resulted directly from the errors of Petitioner's former counsel."  Doc. 1 at 3.  Aleksei M.'s new counsel filed a timely appeal as well as a civil malpractice lawsuit and a bar complaint against the former immigration attorney.  Doc. 1 at 3; Doc. 1-1 at 20–23.  Aleksei M. paid the appellate fee, and the United States acknowledged receipt.  Doc. 1-1 at 24; Doc. 18-12.  Aleksei M.'s appeal of his application denial and removal order remains pending.  Doc. 1 at 3.

On March 30, 2026, Aleksei M. filed the instant Petition, asserting that he is entitled to immediate release or a bond hearing because his prolonged detention without a bond hearing violates his Fifth Amendment right to due process.  Id. at 4.  On April 1, 2026, this Court enjoined

5

for fourteen days Aleksei M.'s removal or transfer outside of the District of South Dakota until further order of the Court so there was no risk that his removal would deprive this Court of jurisdiction over his Petition. Doc. 4. This Court also appointed James Leach to represent Aleksei M. on his Petition. Id. at 3–4. On April 15, 2026, this Court extended its Order enjoining Respondents from removing or transferring Aleksei M. outside of the District of South Dakota for an additional fourteen days to allow completion of briefing and time to write this decision. Doc. 11.

## II.    Discussion

A writ of habeas corpus enables a person detained by the government to challenge the legality of the confinement and, if successful, obtain release. Preiser v. Rodriguez, 411 U.S. 475, 485 (1973). Habeas corpus relief under 28 U.S.C. § 2241 confers jurisdiction upon federal courts to hear habeas challenges to the lawfulness of immigration-related detention, Zadvydas v. Davis, 533 U.S. 678, 687 (2001), but a court's jurisdiction to hear such claims is limited, see 8 U.S.C. § 1226(e); Demore v. Kim, 538 U.S. 510, 516–17 (2003). The petitioner bears the burden of proving by a preponderance of the evidence that his or her detention is unlawful. Walker v. Johnston, 312 U.S. 275, 286 (1941); Muse v. Mullin, No. 26-CV-4024-CJW-MAR, 2026 WL 1008532, at *2 (N.D. Iowa Apr. 14, 2026).

In his Petition, Aleksei M. argues that his detention without a bond determination violates the Due Process Clause of the Fifth Amendment. Docs. 1, 17. Respondents assert that Aleksei M. is subject to mandatory detention under 8 U.S.C. § 1225(b)(2) and therefore is not entitled to release. Doc. 13 at 4. This position is consistent with the change in July of 2025 in interim guidance from the Department of Homeland Security (DHS) and ICE. See Matter of Yajure Hurtado, 29 I. & N. Dec. 216 (BIA 2025); Maldonado v. Olson, 795 F. Supp. 3d 1134, 1150 (D.

Minn. 2025) (noting new interim guidance and discussing historical treatment of noncitizens residing in the United States and interpretations of §§ 1225 and 1226). Before July of 2025 and as previously and widely understood, 8 U.S.C. § 1226 might have provided a statutory right for Aleksei M. to a bond hearing. See Esli D. B.G. v. Bondi, No. 5:26-CV-05020-RAL, 2026 WL 734992, at *4 (D.S.D. Mar. 16, 2026). But a recent decision of a panel of the United States Court of Appeals for the Eighth Circuit chose to interpret "seeking admission" in 8 U.S.C. § 1225 very broadly. Avila v. Bondi, 170 F.4th 1128, 1132–38 (8th Cir. 2026). Though Judge Erickson's dissent pointed out that this had the effect of rendering much of § 1226 "superfluous," this Court is bound by the majority decision's statutory interpretation in Avila. See id. at 1138–41 (Erickson, J., dissenting). However, Avila addressed only the statutory right to a bond hearing and not the constitutional claim raised by Aleksei M. in his Petition. See id. at 1140 n.8 (Erickson, J., dissenting).

Respondents argue that Aleksei M.'s due process argument is without merit because "[c]ivil immigration detention pending removal proceedings is a constitutionally permissible aspect of the removal process," and "[t]he Eighth Circuit has clearly established that continued mandatory detention pending an administrative appeal from a removal order does not violate due process, even when that detention exceeds one year." Doc. 13 at 5 (citing Demore, 538 U.S. at 523 (reviewing a due process challenge to § 1226(c)); Banyee v. Garland, 115 F.4th 928, 933–34 (8th Cir. 2024) (reviewing a due process challenge to § 1226(c))). Respondents describe their actions as "merely maintaining the statutorily mandated status quo while Petitioner exhausts his appellate remedies," and therefore, "the resulting timeline is a necessary consequence of the administrative process, not an unreasonable delay." Id. at 5–6.

Over the course of the last year, the executive branch has made fundamental changes to the policies and procedures compromising federal immigration law, much of which has been contested. See, e.g., Refugee & Immigrant Ctr. for Educ. & Legal Servs. v. Noem, 793 F. Supp. 3d 19, 42, 86, 89, 94–97 (D.D.C. 2025), aff'd Refugee & Immigrant Ctr. for Educ. & Legal Servs. v. Mullin, No. 25-5243, 2026 WL 1110616 (D.C. Cir. Apr. 24, 2026) (affirming grant of summary judgment in favor of plaintiffs and affirming but modifying class certification order).[5] But all immigration policy changes remain "subject to important constitutional limitations" as the Due Process Clause of the Fifth Amendment "applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." Zadvydas, 533 U.S. at 693, 695; see also A.A.R.P. v Trump, 605 U.S. 91, 94 (2025) (per curiam) (procedural due process protections apply to removal proceedings for persons detained under the Alien Enemies Act); Refugee & Immigrant Ctr. for Educ. & Legal Servs., 793 F. Supp. 3d at 89. "It is well established that the Fifth Amendment entitles aliens to due process of law in the context of removal proceedings." Trump v. J.G.G., 604 U.S. 670, 673 (2025) (per curiam) (cleaned up and citation omitted). Under the Fifth Amendment, "[n]o person shall be . . . deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. "The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful

---

[5] See Refugee & Immigrant Ctr. for Educ. & Legal Servs. v. Noem, 793 F. Supp. 3d 19, 42 (D.D.C. 2025) (concluding "that neither the INA nor the Constitution grants the President or the Agency Defendants authority to replace the comprehensive rules and procedures set forth in the INA and the governing regulations with an extra-statutory, extra-regulatory regime for repatriating or removing individuals from the United States, without an opportunity to apply for asylum or withholding of removal and without complying with the regulations governing CAT protection"), aff'd Refugee & Immigrant Ctr. for Educ. & Legal Servs. v. Mullin, No. 25-5243, 2026 WL 1110616, at *2 (D.C. Cir. Apr. 24, 2026) ("We conclude that the INA's text, structure, and history make clear that in supplying power to suspend entry by Presidential proclamation, Congress did not intend to grant the Executive the expansive removal authority it asserts.").

manner." Mathews, 424 U.S. at 332 (cleaned up and citation omitted). The Supreme Court has observed in the immigration context, "Congress regularly makes rules that would be unacceptable if applied to citizens," Mathews v. Diaz, 426 U.S. 67, 79–80 (1976), and that "the nature of th[e] protection" to which noncitizens are entitled under the Due Process Clause "var[ies] depending upon status and circumstance," Zadvydas, 533 U.S. at 693–94. Therefore, this Court considers what protections Aleksei M. is entitled to as a noncitizen detained under § 1225(b)(2) during his removal proceedings.

Demore and Banyee provide this Court with limited guidance; both are distinguishable as they involved due process challenges brought by petitioners detained under 8 U.S.C. § 1226(c), not § 1225(b)(2). See Banyee, 115 F.4th at 931 (reviewing how Demore already "had considered a due-process challenge to" § 1226(c) (citing Demore, 538 U.S. at 514)). In reaching its decision in Demore, the Supreme Court weighed the criminal noncitizens' due process challenge in the context of "the full procedural protections our criminal justice system offers" received *before* the criminal noncitizens' immigration detention. Demore, 538 U.S. at 513. Relying on the distinction between the statutory provisions § 1225(b)(2) and § 1226(c), multiple district courts within the Eighth Circuit have proceeded to analyze the factors established by Mathews v. Eldridge, 424 U.S. 319 (1976), when reviewing due process claims brought by detained noncitizens like Aleksei M. See David J.C.P. v. Blanche, No. CV 26-2181 (DWF/ECW), 2026 WL 1102725 (D. Minn. Apr. 23, 2026); Abbas v. Schneider, No. 4:26-cv-00132-SHL-WPK (S.D. Iowa Apr. 17, 2026); Almazov v. Williams, No. 4:26-cv-00080-RGE-HCA (S.D. Iowa Apr. 16, 2026); Muse, 2026 WL 1008532; Osman J.M.A. v. Blanche, No. CV 26-2123 (DWF/DJF), 2026 WL 1005056 (D. Minn. Apr. 14, 2026); Alicia N.F.C. v. Blanche, No. 26-2145 (DWF/JFD), 2026 WL 1005079 (D. Minn. Apr. 14, 2026); Pedro A.D.L.O.O. v. Bondi, No. 26-1959 (DWF/DJF), 2026 WL 948970 (D. Minn.

9

Apr. 8, 2026); <u>Maldonado v. Olson</u>, 795 F. Supp. 3d 1134, 1148–54 (D. Minn. 2025). <u>Cf.</u> <u>Singh v. Mullin</u>, No. C26-56-LTS-MAR, 2026 WL 1021846 (N.D. Iowa Apr. 15, 2026); <u>Ermekov v. Mullin</u>, No. C26-41-LTS-KEM, 2026 WL 1046766 (N.D. Iowa Apr. 17, 2026). <u>But see, e.g.</u>, <u>Gonzalez-Martinez v. Blanche</u>, No. 8:26CV143, 2026 WL 1045701 (D. Neb. Apr. 17, 2026); <u>Sanchez v. Bondi</u>, No. 1:26-cv-00063, 2026 WL 883680, at *2 (D.N.D. Mar. 31, 2026).

Respondents then argue that even if this Court were to engage in the interest balancing test under <u>Mathews</u>, which Respondents maintain this Court cannot do after the Eighth Circuit's decision in <u>Banyee</u>, an application of those factors would "confirm[] that Petitioner's rights have not been violated." Doc. 13 at 7. Respondents first contend the private interest factor does not weigh in favor of Aleksei M. because "Petitioner lacks the decades of historical reliance, protected status, or prior ICE releases that elevate the liberty interests of long-term residents." <u>Id.</u> at 7–8 (citing <u>Landon v. Plasencia</u>, 459 U.S. 21, 32 (1982) as "holding that constitutional due process protections vary depending on an alien's established ties to the United States"). Respondents then combine argument on both the second and third factors, "the risk of an erroneous deprivation of liberty and the Government's interest," to state that "Petitioner has already received a comprehensive merits hearing before an Immigration Judge," and "the Government's interest in detention remains valid." <u>Id.</u> at 8. Respondents conclude by first referencing recent removal cases before the Supreme Court concerning a person's ability to challenge their detention and removal and then distinguishing due process cases referenced by this Court in its Order Enjoining Removal, Doc. 4, from the case at hand. <u>See</u> <u>id.</u> at 9–12.

The <u>Mathews</u> factors to determine whether civil detention violates due process are: (1) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or

10

substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." Mathews, 424 U.S. at 335. First, Aleksei M.'s interest in release from detention is "the most elemental of liberty interests." Hamdi v. Rumsfeld, 542 U.S. 507, 529–31 (2004). "A noncitizen who has lived for years in the interior of the United States and established connections in the country acquires a protectible liberty interest." Abbas, No. 4:26-cv-132, at 11 (quoting Barrera Leon v. Warden, No. 4:26-1341, 2026 WL 90519, at *3 (S.D. Tex. Apr. 2, 2026)). The exhibits attached to Aleksei M.'s Petition and his asylum application indicate significant, though perhaps not longstanding, ties to communities here in the United States through numerous and detailed letters as well as his employment history. See Docs. 1-1; 18-5. Critically, the United States previously paroled Aleksei M. in 2023 with an initial notice to appear date in April 2027 and permitted him to legally work in the country until 2029. See Docs. 14-3; 18-1. As other courts have observed, noncitizens maintain a strong liberty interest "even if their parole status has expired or been terminated." Almazov, No. 4:26-cv-00080, at 11 (collecting cases). Aleksei M. had been living and working in the United States for almost three years consistent with his status granted by DHS before his arrest for speeding in South Dakota. The first factor weighs heavily in favor of Aleksei M.'s release.

As to the second factor, Respondents did not provide Aleksei M. with a bond hearing, or a process to meaningfully assess whether he should be detained during the pendency of his removal proceedings. Other district courts have characterized the risk of erroneous deprivation as "severe" when "Respondents are proposing *no procedure at all*." Abbas, No. 4:26-cv-00132, at 12 (emphasis in original). Further in the context of humanitarian parole, as another court observed, "[t]he risk of erroneous deprivation of liberty is high when no process has been provided before

11

re-detention but after parole into the United States" while "additional safeguards, such as 'an individualized assessment as to the government's interest in detaining Petitioner[,] would ameliorate that risk' of erroneous deprivation." Almazov, No. 4:26-cv-00080, at 13 (quoting Pedro A.D.L.O.O., 2026 WL 948970, at *3). Aleksei M.'s case is akin to the situation in Hyppolite v. Noem, 808 F. Supp. 3d 474 (E.D.N.Y. 2025), where the court noted that

> the record certainly establishes that there is, at the very least, a substantial likelihood that Respondents would have failed to meet their burden of proving that [Petitioner] constituted either a flight risk or a danger to the community. In other words, the risk that [Petitioner] was erroneously deprived of his liberty through Respondents' failure to provide him with a pre-detention hearing is exceedingly high.

808 F. Supp. 3d at 492. The second factor weighs in favor of Aleksei M.'s release.

Third, considering the Government's recognized significant interest in "ensuring that persons subject to removal do not commit crimes or evade law enforcement," Maldonado, 795 F. Supp. 3d at 1153–54, with Aleksei M.'s private interest in liberty and the risk of erroneous deprivation of that interest, this Court finds that the third factor weighs in favor of Aleksei M. The Government has not detailed any change in Aleksei M.'s circumstances to justify its decision to detain Aleksei M. "The Government's interest in continuing to detain Petitioner is further diminished where . . . the Petitioner has no criminal record, has attended all of his immigration court hearings, and has significant ties to the community—factors that bear directly on flight risk and dangerousness." Bonilla Chicas v. Warden, No. 5:26-CV-00131, 2026 WL 539475, at *11 (S.D. Tex. Feb. 20, 2026). As demonstrated by the record, Aleksei M. has a history of compliance with DHS and no criminal record other than the recent speeding stop in western South Dakota. Thus, Aleksei M.'s continued mandatory detention does not seem to further the Government's interest in ensuring Aleksei M. appears at future hearings or protecting the public. See Almazov, No. 4:26-cv-00080, at 14 ("[T]hose interests are not furthered by summary re-detention of paroled

12

noncitizens whom the government previously determined not to be flight risks nor dangers to the community . . . . [these interests] can be vindicated through an individualized, meaningful assessment as to [petitioner's] risk of absconding or danger to the community."). Finally, considering the fiscal and administrative burdens at issue, the high cost of detention coupled with the preexisting regulations on individualized detention assessments militate against the Government. See id. (citing 8 C.F.R. § 212.5(b) (2022)); Hyppolite, 808 F. Supp. 3d at 494 ("By contrast, the fiscal and administrative burdens of his ongoing detention are unacceptably high.").

Because all three Mathews factors weigh in favor of Aleksei M., this Court concludes that Respondents violated Aleksei M.'s due process rights when they detained him without a bond hearing despite having granted him permission to live and to work through 2029 in the United States and despite Aleksei M.'s only apparent unlawful or even improper act being one speeding arrest, warranting a grant of his habeas petition. See Abbas, No. 4:26-cv-00132, at 13 (collecting cases); Lopez-Arevelo v. Ripa, 801 F. Supp. 3d 668, 687 (W.D. Tex. 2025) ("This decision is supported by a growing number of district courts across the country who have found that holding people like Lopez-Arevelo in mandatory detention without a bond hearing likely constitutes a due process violation." (collecting cases)).

This Court now turns to the appropriate remedy. "Habeas is at its core a remedy for unlawful executive detention. The typical remedy for such detention is, of course, release." Munaf v. Geren, 553 U.S. 674, 693 (2008) (internal citation omitted)). In line with other district courts to have considered this issue, this Court finds that Aleksei M.'s detention violates his due process rights, and the appropriate remedy is release subject to the same conditions that Aleksei M. had been following before his detention in November 2025. Abbas, No. 4:26-cv-00132, at 13; Almazov, No. 4:26-cv-00080, at 14; Villanueva v. Mullin, No. 1:26-CV-849-RP, 2026 WL

Appellate Case: 26-2113    Page: 22    Date Filed: 06/24/2026 Entry ID: 5653978

1045719, at *5 (W.D. Tex. Apr. 15, 2026) ("In recent months, courts across the country have ordered the release of detainees in similar situations." (citation omitted) (collecting cases)); Santiago v. Noem, No. EP-25-CV-361, 2025 WL 2792588, at *13–14 (W.D. Tex. Oct. 2, 2025) (collecting cases and finding that "immediate release appropriately remedies Respondents' violation of [Petitioner's] due process rights through her continued detention.").

### III.    Conclusion

For the foregoing reasons, it is hereby

ORDERED that Petitioner Aleksei M.'s Petition for a Writ of Habeas Corpus, Doc. 1, is granted. It is further

ORDERED that Respondents shall release Petitioner from custody immediately, but no later than within 48 hours of entry of this Order. It is further

ORDERED that upon Petitioner's release, Respondents must return to Petitioner any personal property, including personal identification documents and not re-arrest him unless a material change in circumstances occurs. It is finally

ORDERED that Respondents shall confirm Petitioner's release within three business days from the date of this Order.


DATED this 27th day of April, 2026.

BY THE COURT:

ROBERTO A. LANGE
CHIEF JUDGE

14

# Exhibit B

Appellate Case: 26-2113    Page: 24    Date Filed: 06/24/2026 Entry ID: 5653978

UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
CASE 26-CV-05030

Aleksei MOROZOV

          Petitioner,

   v.

FOD, ICE, *et al.*,

          Respondents.

Case No. 26-cv-05030

DECLARATION OF
Jason Burchett
DEPORTATION OFFICER

I, JASON A. BURCHETT, pursuant to 28 U.S.C. § 1746, hereby declare as follows:

1. I am a Deportation Officer ("DO") employed by the United States Department of Homeland Security ("DHS"), United States Immigration and Customs Enforcement ("ICE"), Office of Enforcement and Removal Operations ("ERO"). I am and have been employed with ICE since June, 2008.

2. I have been tasked with reviewing and responding to a request for records regarding PETITIONER Aleksei MOROZOV ("Petitioner").

3. I make this declaration based on my personal and professional knowledge, my review of records and systems maintained by ICE in the regular course of business, and information provided by other agents and officers.

4. On February 4, 2023, MOROZOV presented himself at the Gateway International Bridge in Brownsville, TX and requested asylum. MOROZOV was served with a Notice to Appear and charged as an arriving alien not in possession of a valid immigrant visa. MOROZOV was released on parole for one year with a parole expiration date of February 3, 2024.

5. On November 13, 2025, the South Dakota Highway Patrol encountered MOROZOV in Belle Fouche, South Dakota, MOROZOV was arrested by South Dakota Highway Patrol

1

Appellate Case: 26-2113   Page: 25   Date Filed: 06/24/2026 Entry ID: 5653978

under 287g authority. MOROZOV was turned over to Deportation Officer Burchett and served with an I-200. MOROZOV was placed into detention pending his immigration hearing.

6. Attached is a true and correct copy of the Form/s I-200, I-213 (2023), I-213 (2025), and I-862.

7. The Form/s I-200, I-213 (2023), I-213 (2025), and I-862 were kept in the course of regularly conducted activities of DHS/ICE.

8. The Form/s I-200, I-213 (2023), I-213 (2025), and I-862 were made by an employee of DHS/ICE who obtained information from immigration officers, Petitioner, and law enforcement information sources regularly maintained in the ordinary course of business by DHS/ICE.

9. Making the Form/s I-200, I-213 (2023), I-213 (2025), and I-862 is a regular practice of DHS/ICE.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Jason Burchett, Deportation Officer

U.S. Immigration and Customs Enforcement

DATED: 04/07/2026

# Exhibit C

Appellate Case: 26-2113     Page: 27     Date Filed: 06/24/2026 Entry ID: 5653978



**UNITED STATES DEPARTMENT OF JUSTICE**
**EXECUTIVE OFFICE FOR IMMIGRATION REVIEW**
**FORT SNELLING IMMIGRATION COURT**

Respondent Name:

    MOROZOV, ALEKSEI

To:

    Gavlin, Nataliya I.
    299 Broadway
    Suite 200
    New York, NY 10007

A-Number:

    ███████

Riders:
In Removal Proceedings
Initiated by the Department of Homeland Security
Date:
03/18/2026

## ORDER OF THE IMMIGRATION JUDGE

☑ This is a summary of the oral decision entered on 03/18/2026. The oral decision in this case is the official opinion, and the immigration court issued this summary for the convenience of the parties.

☐ Both parties waived the issuance of a formal oral decision in this proceeding.

### I.    Removability

The immigration court found Respondent ☐ removable ☑ inadmissible under the following Section(s) of the Immigration and Nationality Act (INA or Act): 212(a)(7)(A)(i)(I)

The immigration court found Respondent ☐ not removable ☐ not inadmissible under the following Section(s) of the Act:

### II.    Applications for Relief

Respondent's application for:

A.  Asylum/Withholding/Convention Against Torture

    ☑ Asylum was ☐ granted ☑ denied ☐ withdrawn with prejudice ☐ withdrawn without prejudice

    ☑ Withholding of Removal under INA § 241(b)(3) was ☐ granted ☑ denied ☐ withdrawn with prejudice ☐ withdrawn without prejudice

    ☑ Withholding of Removal under the Convention Against Torture was ☐ granted ☑ denied ☐ withdrawn with prejudice ☐ withdrawn without prejudice

    ☑ Deferral of Removal under the Convention Against Torture was ☐ granted ☑ denied ☐ withdrawn with prejudice ☐ withdrawn without prejudice

    ☐ Respondent knowingly filed a frivolous application for asylum after notice of the consequences. *See* INA § 208(d)(6); 8 C.F.R. §1208.20

1

B.  Cancellation of Removal

☐ Cancellation of Removal for Lawful Permanent Residents under <u>INA § 240A(a)</u> was ☐ granted ☐ denied ☐ withdrawn with prejudice ☐ withdrawn without prejudice

☐ Cancellation of Removal for Nonpermanent Residents under <u>INA § 240A(b)(1)</u> was ☐ granted ☐ denied ☐ withdrawn with prejudice ☐ withdrawn without prejudice

☐ Special Rule Cancellation of Removal under <u>INA § 240A(b)(2)</u> was ☐ granted ☐ denied ☐ withdrawn with prejudice ☐ withdrawn without prejudice

C.  Waiver

☐ A waiver under INA § was ☐ granted ☐ denied ☐ withdrawn with prejudice ☐ withdrawn without prejudice

D.  Adjustment of Status

☐ Adjustment of Status under INA § was ☐ granted ☐ denied ☐ withdrawn with prejudice ☐ withdrawn without prejudice

E.  Other

The Court's Addendum of Legal Authority is incorporated by reference into the instant oral decision summary and the Court's oral decision.


**III.     Voluntary Departure**

☐ Respondent's application for ☐ pre-conclusion voluntary departure under INA § 240B(a) ☐ post-conclusion voluntary departure under INA § 240B(b) was ☐ denied.

☐ Respondent's application for ☐ pre-conclusion voluntary departure under INA § 240B(a) ☐ post-conclusion voluntary departure under INA § 240B(b) was ☐ granted, and Respondent is ordered to depart by                . The respondent must post a $ bond with DHS within five business days of this order. Failure to post the bond as required or to depart by the required date will result in an alternate order of removal to taking effect immediately.

☐ The respondent is subject to the following conditions to ensure his or her timely departure from the United States:


☐ Further information regarding voluntary departure has been added to the record.

☐ Respondent was advised of the limitation on discretionary relief, the consequences for failure to depart as ordered, the bond posting requirements, and the consequences of filing a post-order motion to reopen or reconsider:

If Respondent fails to voluntarily depart within the time specified or any extensions granted by the DHS, Respondent shall be subject to a civil monetary penalty as provided by relevant statute, regulation, and policy. *See* INA § 240B(d)(1). The immigration court has set
☐ the presumptive civil monetary penalty amount of $3,000.00 USD
☐ $ USD instead of the presumptive amount.
If Respondent fails to voluntarily depart within the time specified, the alternate order of removal shall automatically take effect, and Respondent shall be ineligible, for a period of

2

10 years, for voluntary departure or for relief under sections 240A, 245, 248, and 249 of the Act, to include cancellation of removal, adjustment of status, registry, or change of nonimmigrant status. *Id.* If Respondent files a motion to reopen or reconsider prior to the expiration of the voluntary departure period set forth above, the grant of voluntary departure is automatically terminated; the period allowed for voluntary departure is not stayed, tolled, or extended. If the grant of voluntary departure is automatically terminated upon the filing of such a motion, the penalties for failure to depart under section 240B(d) of the Act shall not apply.

If Respondent appeals this decision, Respondent must provide to the Board of Immigration Appeals (Board), within 30 days of filing an appeal, sufficient proof of having posted the voluntary departure bond. The Board will not reinstate the voluntary departure period in its final order if Respondent does not submit timely proof to the Board that the voluntary departure bond has been posted.

In the case of conversion to a removal order where the alternate order of removal immediately takes effect, where Respondent willfully fails or refuses (1) to depart from the United States pursuant to the immigration court's order, (2) to make timely application in good faith for travel or other documents necessary to depart the United States, (3) to present themselves at the time and place required for removal by the DHS, or (4) conspires to or takes any action designed to prevent or hamper their departure pursuant to the order of removal, Respondent shall be subject to a civil monetary penalty for each day Respondent is in violation, pursuant to INA § 274D and 8 C.F.R. § 280.53(b)(14). If Respondent is removable pursuant to INA § 237(a), then Respondent shall be further fined and/or imprisoned for up to 10 years. See INA § 243(a)(1). Further, any Respondent that has been denied admission to, removed from, or has departed the United States while an order of exclusion, deportation, or removal is outstanding and thereafter enters, attempts to enter, or is at any time found in the United States shall be fined or imprisoned not more than two years, or both. 8 U.S.C. § 1326(a).

## IV.   Removal

☑  Respondent was ordered removed to Russia

☐  In the alternative, Respondent was ordered removed to

☐  Respondent was advised of the penalties for failure to depart pursuant to the removal order:

> If Respondent is subject to a final order of removal and willfully fails or refuses (1) to depart from the United States pursuant to the immigration court's order, (2) to make timely application in good faith for travel or other documents necessary to depart the United States, (3) to present themselves at the time and place required for removal by the DHS, or (4) conspires to or takes any action designed to prevent or hamper their departure pursuant to the order of removal, Respondent shall be subject to a civil monetary penalty for each day Respondent is in violation, pursuant to INA § 274D and 8 C.F.R. § 280.53(b)(14). If Respondent is removable pursuant to INA § 237(a), then Respondent shall be further fined and/or imprisoned for up to 10 years. See INA § 243(a)(1). Further, any Respondent that has been denied admission to, removed from, or has departed the United States while an order of exclusion, deportation, or removal is outstanding and thereafter enters, attempts to enter, or is at any time found in the United States shall be fined or imprisoned not more than two years, or both. 8 U.S.C. § 1326(a).

## V.   Other

Appellate Case: 26-2113   Page: 30   Date Filed: 06/24/2026 Entry ID: 5653978

☐ Proceedings were ☐ dismissed ☐ terminated with prejudice ☐ terminated without prejudice ☐ administratively closed.

☐ Respondent's status was rescinded under INA § 246.

☐ Other:

Immigration Judge: MAZZIE, SARAH 03/18/2026

Appeal:      Department of Homeland Security: ☑ waived  ☐ reserved
             Respondent:                      ☐ waived  ☑ reserved

Appeal Due: 04/17/2026

## Certificate of Service

This document was served:

Via: [ M ] Mail | [ P ] Personal Service | [ E ] Electronic Service | [ U ] Address Unavailable

To: [ ] Alien | [ ] Alien c/o custodial officer | [ E ] Alien atty/rep. | [ E ] DHS

Respondent Name : MOROZOV, ALEKSEI | A-Number : ▮▮▮▮▮▮

Riders:

Date: 03/18/2026 By: Michelle Robertson, Court Staff

# Exhibit D

Appellate Case: 26-2113     Page: 32     Date Filed: 06/24/2026 Entry ID: 5653978

UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
WESTERN DIVISION

| | |
|---|---|
| Aleksei Morozov<br><br>Petitioner,<br><br>v.<br><br>Warden, Lawrence County Jail and Field Office Director, U.S. Immigration and Customs Enforcement,<br><br>Respondents. | 5:26-cv-05030-RAL<br><br><br>**RESPONDENTS' RETURN AND ANSWER TO PETITION FOR WRIT OF HABEAS CORPUS** |

## I. INTRODUCTION

Federal Respondents submit this Return and Answer in opposition to Petitioner Aleksei Morozov's Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241. Petitioner is an unadmitted applicant for admission who is currently detained pursuant to 8 U.S.C. § 1225(b)(2) pending the completion of his ongoing removal proceedings. Petitioner's detention is explicitly mandated by statute, a mandate recently reaffirmed by the Eighth Circuit. *See Avila v. Bondi*, No. 25-3248, 2026 WL 819258 (8th Cir. Mar. 25, 2026). Furthermore, binding circuit precedent forecloses Petitioner's procedural due process claims, explicitly rejecting the application of multi-factor balancing tests to mandate the release of noncitizens undergoing prolonged mandatory detention. *See Banyee v. Garland*, 115 F.4th 928 (8th

1

Appellate Case: 26-2113    Page: 33    Date Filed: 06/24/2026 Entry ID: 5653978

Cir. 2024). Because Petitioner's detention is both statutorily authorized and constitutionally sound, the petition must be denied and dismissed.

## II. FACTUAL AND PROCEDURAL BACKGROUND

Petitioner is a native and citizen of Russia. He entered the United States on or about February 4, 2023, via the CBP One process. Upon entry, Petitioner was processed as an applicant for admission and granted a limited, one-year period of humanitarian parole pursuant to 8 U.S.C. § 1182(d)(5)(A), with an explicit expiration date of February 3, 2024. *See* Decl. of Jason Burchett ¶ 4; *Id.*, Ex. C, Form I-213 (2023). He was concurrently issued a Notice to Appear (NTA) charging him under section 212(a)(7)(A)(i)(I) of the INA as an immigrant who, "at the time of application for admission," was not in possession of a valid unexpired immigrant visa or other valid entry document and placing him in removal proceedings. *Id.*; Ex. A, Form I-862.

Pursuant to 8 C.F.R. § 212.5(e)(1)(ii), humanitarian parole terminates automatically and without written notice upon the expiration of the authorized time period. Accordingly, Petitioner's authorized period of parole expired by operation of law on February 3, 2024. Following the expiration of his parole, Petitioner's immigration status reverted to that of an unadmitted, unparoled applicant for admission. *See* 8 U.S.C. § 1182(d)(5)(A) (mandating that upon termination of parole, an alien's case "shall continue to be dealt with in the same manner as that of any other applicant for admission"); 8 C.F.R. § 212.5(e)(1)(ii), (2)(i) (providing that parole automatically terminates upon expiration and the alien "shall be regarded as an

2

arriving alien"); *see also Leng May Ma v. Barber*, 357 U.S. 185, 188 (1958) (affirming that a grant of parole does not alter an alien's legal status as an unadmitted applicant for admission).

On November 13, 2025, South Dakota Highway Patrol encountered Petitioner and subsequently turned him over to U.S. Immigration and Customs Enforcement (ICE). *See* Burchett Decl. ¶ 5; *Id.*, Ex. D, Form I-213 (2025). He was served with a Form I-200 Warrant for Arrest of Alien and has been detained at the Lawrence County Jail since that date pursuant to the mandatory detention provisions of 8 U.S.C. § 1225(b)(2). *See* Burchett Decl. ¶ 5; *Id.*, Ex. B, Form I-200.

While in custody, Petitioner's removal proceedings advanced efficiently before the Executive Office for Immigration Review (EOIR). On March 18, 2026—approximately four months after ICE assumed custody—an Immigration Judge conducted an Individual Hearing on the merits of Petitioner's case. The Immigration Judge found Petitioner inadmissible under section 212(a)(7)(A)(i)(I) of the INA, denied his applications for asylum, withholding of removal, and protection under the Convention Against Torture, and formally ordered Petitioner removed to Russia. *See* Ex. E, Order of the Immigration Judge.[1] Petitioner subsequently retained new counsel

---

[1] This document is not attached to the Declaration of Jason Burchett, as it is an official record generated by the EOIR rather than ICE. The Court may take judicial notice of the Immigration Judge's Order of Removal, attached hereto as Exhibit E. *See* Fed. R. Evid. 201(b)(2) (permitting judicial notice of facts that "can be accurately and readily determined from sources whose accuracy cannot reasonably be

3

and filed a timely administrative appeal to the Board of Immigration Appeals (BIA), asserting ineffective assistance by his former counsel. That appeal remains pending. *See* Dkt. 2, Decl. of Aleksei Morozov ¶ 7; Ex. E.

## III. LEGAL ARGUMENT

### A. Petitioner is Lawfully Detained Pursuant to 8 U.S.C. § 1225(b)(2)

Petitioner's detention is statutorily mandated by the Immigration and Nationality Act. Under 8 U.S.C. § 1225(b)(2)(A), an alien who is an "applicant for admission" must be detained for a removal proceeding if an examining officer determines they are not clearly and beyond a doubt entitled to be admitted. *See also Jennings v. Rodriguez*, 583 U.S. 281, 296-302 (2018) (holding that § 1225(b) mandates detention for the duration of removal proceedings). Because Petitioner's administrative appeal is actively pending before the BIA, his removal order is not administratively final. *See* 8 U.S.C. § 1101(a)(47)(B); 8 C.F.R. § 1241.1. Consequently, the post-order detention framework under 8 U.S.C. § 1231 has not been triggered, and § 1225(b)(2) remains the exclusive governing authority for his pre-order detention.

As the Eighth Circuit recently affirmed in *Avila,* 2026 WL 819258, at *4, an unadmitted alien residing in the interior remains an "applicant for admission" subject

---

questioned"); *see also Levy v. Ohl*, 477 F.3d 988, 991 (8th Cir. 2007) (noting district courts may take judicial notice of public records and administrative proceedings).

4

to mandatory detention under § 1225(b). The issuance of an administrative form, such as a Form I-200 Warrant for Arrest, cannot override this clear statutory mandate.

**B. Petitioner's Detention Comports with the Due Process Clause, and Binding Eighth Circuit Precedent Forecloses Balancing Tests**

Civil immigration detention pending removal proceedings is a constitutionally permissible aspect of the removal process. *See Demore v. Kim*, 538 U.S. 510, 523 (2003). While courts recognize that detention may not become unconstitutionally prolonged, the timeline of Petitioner's case does not support a procedural due process violation. Petitioner was provided a merits hearing before an Immigration Judge within four months of his detention; the current continuation of his custody is the direct result of his lawful pursuit of an administrative appeal to the BIA.

The Eighth Circuit has clearly established that continued mandatory detention pending an administrative appeal from a removal order does not violate due process, even when that detention exceeds one year. *See Banyee v. Garland*, 115 F.4th 928, 933-34 (8th Cir. 2024). What matters for constitutional purposes is not the precise length of the detention, but that the detention maintains a "definite termination point"—either removal or release—at the conclusion of the proceedings. *See id.* at 932 (quoting *Demore*, 538 U.S. at 528-29). Because the Government is merely maintaining the statutorily mandated status quo while Petitioner exhausts his appellate remedies, and there is no indication the proceedings are a ruse to incarcerate him for other reasons,

5

the resulting timeline is a necessary consequence of the administrative process, not an unreasonable delay.

While *Banyee* addressed mandatory detention under 8 U.S.C. § 1226(c), its constitutional logic applies *a fortiori* to arriving aliens detained under § 1225(b)(2). Procedural due process rights in the immigration context scale strictly with an individual's lawful ties to the country. *See Landon v. Plasencia*, 459 U.S. 21, 32 (1982). The petitioner in *Banyee* was a Lawful Permanent Resident who had grown up in the United States, yet the Eighth Circuit firmly held he possessed no constitutional right to a reasonableness balancing test or release during his prolonged appellate process. *See Banyee*, 115 F.4th at 930-31. If an admitted permanent resident with deeply entrenched constitutional ties is not entitled to a balancing test to bypass a statutory detention mandate, Petitioner—an unadmitted arriving alien whose one-year parole has expired—cannot claim that the Constitution affords him greater protections. Ultimately, whether under § 1226(c) or § 1225(b)(2), the detention maintains a definite termination point upon the resolution of the appeal, satisfying due process.

Furthermore, to the extent Petitioner advocates for an individualized due process balancing test, the Eighth Circuit has explicitly rejected the application of multi-factor "reasonableness" frameworks to mandate the release of noncitizens undergoing mandatory detention. *See Banyee*, 115 F.4th at 933 (abrogating *Muse v. Sessions*, 409 F. Supp. 3d 707 (D. Minn. 2018)). Acknowledging that deciding what process is due ordinarily requires a form of interest balancing under *Mathews v.*

*Eldridge*, the Eighth Circuit held that the Supreme Court's decisions in *Demore* and *Zadvydas* "have already done whatever balancing is necessary," leaving "no room" for lower courts to conduct further multi-factor reasonableness tests. *Id.*

District courts within the Eighth Circuit are already applying *Banyee*'s strict prohibition on judicial balancing to foreclose due process challenges brought by arriving aliens detained under § 1225(b)(2). *See Mendez Leiva v. Berg*, No. 4:26-cv-3023, 2026 WL 948430, at *4 (D. Neb. Apr. 8, 2026); *Boubacar v. Blanch*, No. 8:26-cv-59, 2026 WL 972708, at *3 (D. Neb. Apr. 10, 2026); *but see A.D.L.O.O. v. Bondi*, No. CV 26-1959, 2026 WL 948970, at *3-*4 (D. Minn. Apr. 8, 2026) (applying the *Mathews* balancing test and distinguishing *Banyee* in a footnote). In *Mendez Leiva*, the Chief Judge for the District of Nebraska rejected an asylum seeker's request for an individualized bond hearing, holding that under *Banyee* and *Demore*, the fact that the petitioner challenged his mandatory detention under § 1225(b) rather than § 1226(c) "makes little difference." *Id.* The court explicitly refused to apply the *Mathews v. Eldridge* balancing test to weigh the alien's private liberty interests, confirming that because the administrative proceedings were actively pending, the detention maintained a definite termination point and satisfied due process. *Id.* This Court should reach the exact same conclusion here.

Even if an objective application of the *Mathews*, 424 U.S. 319, balancing test were theoretically permitted, it confirms that Petitioner's rights have not been violated. First, regarding the private interest, Petitioner lacks the decades of historical

7

reliance, protected status, or prior ICE releases that elevate the liberty interests of long-term residents. *See Landon*, 459 U.S. at 32 (holding that constitutional due process protections vary depending on an alien's established ties to the United States). He arrived just two and a half years ago, and his authorized parole expired after one year. Second, regarding the risk of an erroneous deprivation of liberty and the Government's interest, Petitioner has already received a comprehensive merits hearing before an Immigration Judge, resulting in a denial of relief and an active order of removal. The Eighth Circuit recognizes that the Government's interest in detention remains valid, and no due process violation occurs, as long as "deportation remains a possibility" at the conclusion of the appellate process. *See Banyee*, 115 F.4th at 933-34. Because deportation remains a highly foreseeable outcome of his pending proceedings, Petitioner's statutorily authorized detention aligns with established due process protections.

Furthermore, the Supreme Court has affirmed that while the Fifth Amendment entitles noncitizens to due process in removal proceedings, that requirement only guarantees an opportunity to be heard "appropriate to the nature of the case." *Trump v. J. G. G.*, 604 U.S. 670, 673 (2025) (quoting *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 313 (1950)). In *J.G.G.,* and its companion case, the Court held that due process is satisfied when a detained noncitizen receives notice and "sufficient time and information to reasonably be able to contact counsel, file a petition, and pursue appropriate relief" in habeas corpus. *A. A. R. P. v. Trump*, 605 U.S. 91, 95

8

(2025) (per curiam). The Court explicitly noted that "immediate physical release is not the only remedy under the federal writ of habeas corpus." *Trump v. J. G. G.*, 604 U.S. 670, 672 (2025) (quoting *Peyton v. Rowe*, 391 U.S. 54, 67 (1968)).[2] Here, Petitioner has received far more process than the constitutional baseline articulated in *J.G.G.* and *A.A.R.P.* Rather than facing summary removal on 24 hours' notice, Petitioner was provided a comprehensive merits hearing before an Immigration Judge, is actively utilizing the administrative appellate process, and is currently exercising the exact avenue for habeas review guaranteed by the Supreme Court. Because Petitioner has been afforded robust procedural safeguards exceeding the constitutional minimum, his ongoing, statutorily mandated detention pending the conclusion of those proceedings does not violate due process.

## C. The District Court Decisions Cited by the Court Are Factually and Legally Distinguishable

In its Order requiring a response, the Court cited several recent out-of-circuit and out-of-district decisions to suggest that Petitioner may be entitled to release. However, analysis of these cases demonstrates that they rest on highly distinguishable procedural anomalies and extraordinary reliance interests not present here.

---

[2] To the extent Petitioner attempts to rely on *Noem v. Abrego Garcia*, 604 U.S. ___, 145 S. Ct. 1017 (2025), that case is wholly inapposite. *Abrego Garcia* involved the admittedly unlawful deportation of a noncitizen in direct violation of an active withholding of removal order. *See id.* at 1018. Petitioner Morozov, conversely, is subject to an active order of removal following a full merits hearing, and his ongoing detention is statutorily mandated while he pursues his administrative appeal.

**1. *Herrera v. Bondi* (D. Minn.) is Inapposite Because, Unlike Herrera, Petitioner's Parole Expired.**

*Herrera v. Bondi*, No. 26-cv-1895, 2026 WL 827571 (D. Minn. Mar. 25, 2026), is legally inapplicable. In *Herrera*, the district court ordered the petitioner's release because the government detained him while he still possessed a valid, unexpired grant of humanitarian parole, thereby violating its own regulations by failing to provide written notice of revocation. *See id.* at *2–3. That procedural defect did not occur here, as Petitioner was granted humanitarian parole for a strictly limited duration of one year. *See* Decl. of Jason Burchett ¶ 4. Under 8 C.F.R. § 212.5(e)(1)(ii), parole terminates automatically and without written notice at the expiration of the authorized time. Because Petitioner's parole automatically terminated by operation of law in February 2024, he was an unparoled applicant for admission at the time of his November 2025 arrest, rendering his detention statutorily compliant. *See* Decl. of Jason Burchett ¶¶ 4–5; *Matter of Q. Li*, 29 I. & N. Dec. 66, 70–71 (BIA 2025).

**2. *Santiago v. Noem* (W.D. Tex.) Relied on Entrenched DACA Protections.**

In *Santiago v. Noem*, No. 25-cv-361, 2025 WL 2792588 (W.D. Tex. Oct. 2, 2025), the court found mandatory detention unconstitutional as applied because the petitioner had deeply entrenched, government-sanctioned reliance interests. *See id.* at *10–11, *13. The petitioner in *Santiago* had lived in the United States for 20 years, was married to a U.S. citizen, and held Deferred Action for Childhood Arrivals (DACA) status for 13 years. *See id.* at *1–2, *11. Because DACA provided explicit government

protection from removal, an Immigration Judge had actually terminated her removal proceedings. *See id.* at \*1–2. The court found the government had zero interest in detaining her because her removal was legally prohibited. *See id.* at \*12–13. Petitioner Morozov, in stark contrast, has been in the United States for just 2.5 years, possesses no protected status, and is currently subject to an active order of removal following a merits hearing. *See* Decl. of Jason Burchett ¶ 4; Decl. of Aleksei Morozov ¶¶ 2, 5.[3]

### 3. *Bonilla Chicas v. Warden* (S.D. Tex.) Relied on a Prior ICE Release.

In *Bonilla Chicas v. Warden*, No. 5:26-cv-00131, 2026 WL 539475 (S.D. Tex. Feb. 20, 2026), the court found a due process violation because the government arbitrarily redetained a noncitizen it had previously vetted and released. *See id.* at \*8, \*11–12. The petitioner had been present for over 20 years and was explicitly released on his own recognizance by ICE in 2013, meaning ICE had formally evaluated him and determined he was neither a flight risk nor a danger. *See id.* at \*2, \*8. He lived freely for another 13 years before being abruptly redetained. *See id.* at \*8, \*11. The court held that revoking a decade-old custody determination without a hearing violated due

---

[3] To the extent Petitioner relies on the constitutional analysis in *Santiago*, that out-of-circuit decision is fundamentally incompatible with the law of this jurisdiction. The *Santiago* court explicitly acknowledged the Eighth Circuit's holding in *Banyee*—that "[d]ue process imposes no time limit on detention pending deportation"—but deliberately chose to apply the multi-factor balancing tests adopted by the First, Second, and Third Circuits instead. *See Santiago*, 2025 WL 2792588, at \*8 (quoting *Banyee*, 115 F.4th at 930). Because this Court is bound by Eighth Circuit precedent, which expressly forbids the use of those balancing tests, the legal framework underlying *Santiago* is inapplicable here.

process. *See id.* at \*11–12. Petitioner Morozov possesses no prior ICE custody determination releasing him on recognizance; he was detained upon his first encounter with law enforcement after his 1-year parole expired. *See* Decl. of Jason Burchett ¶¶ 4–5.

### 4. *Bonilla Conforme v. De Anda-Ybarra* (W.D. Tex.) Applied a Constitutional Balancing Test Foreclosed by Eighth Circuit Precedent.

In *Bonilla Conforme v. De Anda-Ybarra*, No. 3:26-cv-00263, 2026 WL 381110 (W.D. Tex. Feb. 11, 2026), the court granted habeas relief primarily because the government failed to brief any factual distinctions or due process arguments, relying entirely on a blanket statutory defense. *See id.* at \*1–2. Beyond the government's briefing deficiencies in that case, *Bonilla Conforme* is both legally and procedurally inapposite. First, to the extent the decision relies on the *Mathews v. Eldridge* balancing framework utilized by other out-of-circuit courts to mandate release, that constitutional analysis is expressly foreclosed in this jurisdiction. As established above, the Eighth Circuit in *Banyee* strictly prohibits the application of multi-factor balancing tests to bypass statutory detention mandates. Second, the relief granted in *Bonilla Conforme*—an initial bond hearing—highlights the distinct procedural posture of that case. Petitioner Morozov has already advanced far beyond the preliminary stages of his removal proceedings; he was provided a full, comprehensive hearing on the merits before an Immigration Judge and is currently detained pursuant to his lawful administrative appeal. Under binding Eighth Circuit precedent, Petitioner's ongoing

detention during this appellate phase maintains a definite termination point and fully satisfies due process.

## IV. AN EVIDENTIARY HEARING IS NOT REQUIRED

In a habeas corpus proceeding under 28 U.S.C. § 2241, the Court is directed to summarily "dispose of the matter as law and justice require." 28 U.S.C. § 2243. It is a well-established principle of federal habeas review that an evidentiary hearing is not required when the petition presents pure questions of law and there are no genuine disputes of material fact. Here, the material facts governing Petitioner's detention are undisputed and are fully documented in the administrative record attached to this Return and Petitioner's submission.

## V. CONCLUSION

For the foregoing reasons, Petitioner's continued detention is statutorily mandated by 8 U.S.C. § 1225(b)(2) and entirely comports with the Due Process Clause of the Fifth Amendment. Accordingly, Respondents respectfully request that the Court deny and dismiss the Petition for Writ of Habeas Corpus with prejudice.

Dated this 15th day of April 2026.

RONALD A. PARSONS, JR.
United States Attorney

*/s/ Aron Hogden*
ARON HOGDEN
Assistant United States Attorney
P.O. Box 2638
Sioux Falls, SD 57101-2638
(605) 330-4400
Aron.Hogden@usdoj.gov

13

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on this 15th day of April, 2026, service of

the Respondents' Return and Answer to Petition for Writ of Habeas Corpus,

Declaration of Jason Burchett, and corresponding exhibits were made upon the

Petitioner by mailing a true and correct copy thereof by US mail to:

Aleksei Morozov
Lawrence County Jail
80 Sherman St.
Deadwood, SD 57732

☒   US Mail
☐   FedEx
☐   ECF
☐   Electronic Mail


/s/ *Aron Hogden*
Aron Hogden

14

Appellate Case: 26-2113     Page: 46     Date Filed: 06/24/2026 Entry ID: 5653978

# Exhibit E

Appellate Case: 26-2113　　Page: 47　　Date Filed: 06/24/2026 Entry ID: 5653978

# **UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA**

**Aleksei Morozov**
A# 246424639
Petitioner,

v.

**Warden, Lawrence County Jail**
and
**Field Office Director, U.S. Immigration and Customs Enforcement**
Respondents.

Case No. _____

## **PETITION FOR WRIT OF HABEAS CORPUS

UNDER 28 U.S.C. § 2241**

---

# 1. INTRODUCTION

Petitioner **Aleksei Morozov** respectfully petitions this Court for a writ of habeas corpus under **28 U.S.C. § 2241**, challenging his **prolonged immigration detention without an individualized bond hearing**.

Mr. Morozov has been detained since **November 13, 2025**. His continued detention violates the **Due Process Clause of the Fifth Amendment** because it is prolonged, unnecessary, and imposed **without review by a neutral decisionmaker**.

# 2. JURISDICTION AND VENUE

This Court has jurisdiction under **28 U.S.C. § 2241** because Petitioner is **"in custody"** and challenges the legality of his detention.

Venue lies in this District because Petitioner is detained at **Lawrence County Jail**, which is located within the **District of South Dakota**.

1

Appellate Case: 26-2113    Page: 48    Date Filed: 06/24/2026 Entry ID: 5653978

# 3. PARTIES

**Petitioner:**
Aleksei Morozov
A# 246424639
DOB: April 7, 1972
Citizen of the Russian Federation
Currently detained at: Lawrence County Jail, Rapid City, South Dakota.

**Respondents:**

- **Warden**, Lawrence County Jail
- **Field Office Director**, U.S. Immigration and Customs Enforcement

# 4. FACTUAL BACKGROUND

1. Petitioner entered the United States on **February 4, 2023** via the **CBP One** process and received **humanitarian parole** documented on Form I94.
2. He timely filed Form I589 within one year of entry.
3. Petitioner obtained a valid **Employment Authorization Document**, Social Security number, and has **no criminal history**.
4. He has complied with all immigration requirements and established **strong community ties**, including stable housing and positive references.
5. On **November 13, 2025**, while driving from Washington State to Illinois, he was stopped by local police; ICE officers took him into custody.
6. He has been detained at Lawrence County Jail since that date.
7. Petitioner is the **sole financial provider** for his family. He has a **minor child** and a **wife who suffers from significant health issues** and depends on him for care and financial support. His detention has caused substantial hardship to his immediate family, who lack alternative means of support.

# 5. IMMIGRATION PROCEEDINGS

2

Petitioner is in removal proceedings before the Executive Office for Immigration Review. Petitioner initially retained an attorney in 2023 to prepare his asylum application. That attorney submitted an incomplete and substantively blank Form I589, leaving the asylum application without the factual information or supporting evidence required for adjudication.

Petitioner's Individual Hearing occurred on March 18, 2026. At that hearing, the Immigration Judge denied Petitioner's applications for relief, citing the absence of a complete asylum application and supporting documents, which resulted directly from the errors of Petitioner's former counsel.

In November 2025, prior to the Individual Hearing, Petitioner retained new counsel. New counsel prepared and filed a complete and properly supported Form I589 along with all required attachments and countryconditions documentation. After the March 18, 2026 decision, new counsel promptly filed a timely appeal of the Immigration Judge's ruling, and that appeal remains pending.

In addition, new counsel has filed a civil malpractice action against Petitioner's former attorney based on professional negligence, and has submitted a formal complaint to the appropriate state bar disciplinary authority regarding former counsel's conduct.

# 6. LEGAL ARGUMENT

## A. Prolonged Civil Detention Without a Bond Hearing Violates the Fifth Amendment

Immigration detention is **civil**, not punitive.
Civil detention must remain **reasonably related** to its purpose. When it becomes prolonged without adequate procedural protections, it violates due process.

Courts across the country have held:

- Prolonged detention without a bond hearing requires judicial review.
- Due process requires a **neutral arbiter** to determine danger or flight risk.
- Detention must not be **arbitrary or indefinite**.
- Petitioner is the **sole provider** for his minor child and his wife, who has ongoing medical conditions. The hardship imposed on his dependent family members underscores that continued detention serves no legitimate governmental purpose and is excessively punitive. Petitioner's family ties further demonstrate that he is **not a flight risk** and that less restrictive alternatives to detention are available.

3

## B. Petitioner's Continued Detention Is Unreasonable and Unconstitutional

1. Petitioner has been detained for **over four months**, with no end in sight.
2. He has **no criminal history**, strong community ties, and a history of full compliance with DHS.
3. ICE has not provided a **meaningful opportunity** to contest his detention.
4. A bond hearing is necessary to determine whether detention remains justified.

## C. Petitioner Is Entitled to Release or a Bond Hearing

Due process requires either:

- **Immediate release**, or
- **A bond hearing** at which the government bears the burden to justify continued confinement.

# 7. REQUEST FOR RELIEF

Petitioner respectfully asks this Court to:

1. **Grant the Petition for Writ of Habeas Corpus**;
2. **Order his immediate release** under reasonable conditions; **or**
3. **Order an individualized bond hearing** before an immigration judge within a reasonable time, with DHS bearing the burden of proof; and
4. Grant any additional relief the Court deems just and proper.

# 8. DECLARATION

I, Aleksei Morozov, declare under penalty of perjury under 28 U.S.C. § 1746 that the facts stated in this Petition are true and correct.

*Aleksei Morozov*

**Aleksei Morozov**
A# 246424639
Date: 03/23/26

4

# Exhibit F

Appellate Case: 26-2113    Page: 52    Date Filed: 06/24/2026 Entry ID: 5653978

UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
WESTERN DIVISION

| | | |
|---|---|---|
| ALEKSEI M., | ) | Case No.  5:26-cv-05030-RAL |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | |
| | ) | **NOTICE OF RELEASE** |
| WARDEN, LAWRENCE COUNTY JAIL; | ) | |
| AND FIELD OFFICE DIRECTOR, U.S. | ) | |
| IMMIGRATION AND CUSTOMS | ) | |
| ENFORCEMENT, | ) | |
| | ) | |
| Respondents. | ) | |

Please take notice that Petitioner, Aleksei M., was released from the Lawrence County Jail in Deadwood, South Dakota at approximately 10:30 a.m. MDT on April 28, 2026 in accordance with the Opinion and Order Granting Writ of Habeas Corpus and Ordering Release (Doc. 19) and Order to Detain or Release Alien attached as Exhibit 1.

Dated:  April 29, 2026.

GUNDERSON, PALMER, NELSON
& ASHMORE, LLP

By:  */s/ Rebecca L. Mann*

Rebecca L. Mann
*Attorneys for Respondent Warden, Lawrence County Jail*
P.O. Box 8045
Rapid City, SD  57709
Telephone: (605) 342-1078
E-mail: rebecca.mann@gpna.com

1

Subject ID: 400698110

## ORDER TO DETAIN OR RELEASE ALIEN

TO: (NAME and TITLE of Person in Charge of Facility)
JAIL ADMINSTRATOR or OIC

(Name of Facility) LAWRENCE CO. JAIL, SD

| Please | ☐ Detain | ☒ Release | | Date 04/28/2026 | Time 10:00 AM |
|---|---|---|---|---|---|

| Name of Alien M██████, ALEKSEI | File Number ██████ |
|---|---|
| | Event No: ██████ |

| Age 53 | Date of Birth(Mo.Day.Yr.) ████████ | Sex M | Nationality RUSSIA | Foreign Address |
|---|---|---|---|---|

| Nature of Proceedings DHS ICE ERO book out/release | Signature of Officer Receiving Alien |
|---|---|

**REMARKS:**

SUBJECT IS TO BE RELEASED FROM THE LAWRENCE COUNTY JAIL.

| Signature of Officer Authorizing Action HOWIE, K. 4659 | Title Deportation Officer | Office RPC/T |
|---|---|---|

Form I-203 (Rev. 08/01/07)

### UNITED STATES DEPARTMENT OF HOMELAND SECURITY

2