## No. 26-2113

---

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE EIGHTH CIRCUIT

---

ALEKSEI MOROZOV

*Petitioner-Appellee,*

v.

WARDEN, LAWRENCE COUNTY JAIL,
*Respondent*

FIELD OFFICE DIRECTOR, U.S. IMMIGRATION AND CUSTOMS
ENFORCEMENT; UNITED STATES ATTORNEY, FOR THE DISTRICT OF
SOUTH DAKOTA,

*Respondents-Appellants.*

---

On Appeal from the United States District Court
for the District of South Dakota
No. 5:26-cv-05030-RAL

---

## RESPONDENTS-APPELLANTS' OPENING BRIEF

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

DREW C. ENSIGN
Deputy Assistant Attorney General

BENJAMIN HAYES
Senior Counsel to the Assistant
Attorney General

ALLISON FRAYER
Senior Litigation Counsel
Office of Immigration Litigation

SPENCER SHUCARD
Trial Attorney
Office of Immigration Litigation
Civil Division
U.S. Department of Justice
P.O. Box 878 Ben Franklin Station
Washington, DC 20044
Tel: (402) 219-3529

*Counsel for the Federal Respondents*

**SUMMARY OF CASE AND REQUEST FOR ORAL ARGUMENT**

In *Avila v. Bondi*, 170 F.4th 1128 (8th Cir. 2026), this Court held that aliens who are "applicants for admission" under 8 U.S.C. §1225(a)(1) and cannot show they are "clearly and beyond a doubt entitled to be admitted" are subject to mandatory detention, without bond, under §1225(b)(2)(A). There is no dispute that Petitioner is an "applicant for admission" and has failed to show he is entitled to be admitted. The district court, however, held that the Due Process Clause entitles Petitioner to a hearing to assess whether he is a flight risk or dangerous. But because those factors are irrelevant to whether §1225(b)(2)(A) applies, Petitioner has no procedural due process right to such a hearing. *See Conn. Dep't of Pub. Safety v. Doe*, 538 U.S. 1 (2003). Any substantive due process challenge to §1225(b)(2)(A) fails under rational basis review. *See Demore v. Kim*, 538 U.S. 510 (2003); *Banyee v. Garland*, 115 F.4th 928 (8th Cir. 2024).

This appeal raises an important and recurring issue and Respondents believe oral argument would aid the Court in resolving this appeal. Respondents request twenty minutes for oral argument.

**TABLE OF CONTENTS**

INTRODUCTION ....................................................................................1

STATEMENT OF JURISDICTION ................................................... 4

STATEMENT OF THE ISSUE.......................................................... 5

STATEMENT OF THE CASE ........................................................... 5

    I.   Statutory Framework.................................................................5

        A.  The pre-1996 immigration laws gave preferential treatment—including bond hearings—to aliens who entered the United States unlawfully. ............................................. 5

        B.  IIRIRA eliminated the preferential treatment of aliens who unlawfully entered the United States and mandated detention of "applicants for admission."......................................... 7

        C.  The government applies §1225(b)(2)(A)'s requirement that all "applicants for admission" be detained pending removal proceedings. ......................................................... 11

        D.  This Court held that §1225(b)(2)(A) mandates detention of all applicants for admission.............................................12

    II.  Factual Background and Procedural History......................................12

SUMMARY OF ARGUMENT ........................................................14

ARGUMENT ...................................................................................16

STANDARD OF REVIEW.................................................................................16

I.   Petitioner's claim sounds in substantive due process and fails under rational basis review.................................................................................16

    A.  Procedural due process does not entitle Petitioner to a hearing to determine facts that are irrelevant to §1225(b)(2)(A).............17

    B.  Petitioner does not have a substantive due process right to a bond hearing to justify his detention pending removal proceedings. ........................................................................ 23

       1.  Petitioner's substantive due process claim is subject to rational   basis review..........................................................23

       2.  The Supreme Court and this Court have repeatedly rejected substantive due process challenges to mandatory detention in the immigration context..................................................24

       3.  Petitioner's substantive due process claim fails under rational basis  review..........................................................29

II.  Even if Petitioner were asserting a cognizable procedural due process claim, it would be meritless..................................................34

    A.  Petitioner is entitled only to the procedures Congress has provided through statute. .......................................................... 34

    B.  Petitioner's procedural due process claim fails under any standard. ............................................................................... 37

CONCLUSION ....................................................................................... 42

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

## CASES

*A.A.R.P. v. Trump,*
  605 U.S. 91 (2025) ..................................................................... 36

*Avila v. Bondi,*
  170 F.4th 1128 (8th Cir. 2026) ..................................... 1, passim

*Banyee v. Garland,*
  115 F.4th 928 (8th Cir. 2024) ....................................3, passim

*Buenrostro-Mendez v. Bondi,*
  166 F.4th 494 (5th Cir. 2026)........................................5, passim

*Carlson v. Landon,*
  342 U.S. 524 (1952) ......................................................... 26, 27

*Conn. Dep't of Pub. Safety v. Doe,*
  538 U.S. 1 (2003)......................................................2, passim

*Demore v. Kim,*
  538 U.S. 510 (2003)................................................3, passim

*Department of State v. Muñoz,*
  602 U.S. 899 (2024) .........................................................17, 22

*DHS v. Thuraissigiam,*
  591 U.S. 103 (2020) ..................................................3, passim

*Dusenbery v. United States,*
  534 U.S. 161 (2002) ............................................................ 37

*Hing Sum v. Holder,*
  602 F.3d 1092 (9th Cir. 2010) ............................................. 5

*Jennings v. Rodriguez,*
  583 U.S. 281 (2018) ..................................................8, passim

iv

*Kaplan v. Tod,*
  267 U.S. 228 (1925) ...................................................................... 35, 36

*Landon v. Plasencia,*
  459 U.S. 21 (1982) ........................................................ 34, 38, 40, 41

*Lopez-Campos v. Raycraft,*
  175 F.4th 713 (6th Cir. 2026) .................................................. 20, <u>passim</u>

*Make the Road New York v. Mullin,*
  ---F.4th---, 2026 WL 1792978 (D.C. Cir. June 23, 2026) ............ 36, 37, 38

*Mathews v. Diaz,*
  426 U.S. 67 (1976) ......................................................................... 24

*Mathews v. Eldridge,*
  424 U.S. 319 (1976) ...............................................................3, <u>passim</u>

*Michael H. v. Gerald D.,*
  491 U.S. 110 (1989) ...................................................................... 20

*Mullane v. Central Hanover Bank & Trust Co.,*
  339 U.S. 306 (1950) ................................................................. 36, 37

*Nelson v. Colorado,*
  581 U.S. 128 (2017) ....................................................................... 22

*Nishimura Ekiu v. United States,*
  142 U.S. 651 (1892) ............................................................ 33, 34, 35

*Parra v. Perryman,*
  172 F.3d 954 (7th Cir. 1999) ......................................................... 39

*Reno v. Flores,*
  507 U.S. 292 (1993) ................................................................. 17, 19

*Rodriguez v. Ortega,*
  ---F.4th---, 2026 WL 1906557 (5th Cir. July 2, 2026) ................8, <u>passim</u>

*Shaughnessy v. United States ex rel. Mezei,*
345 U.S. 206 (1953) ..................................................... 35

*Torres v. Barr,*
976 F.3d 918 (9th Cir. 2020) ..................................... 7

*Trump v. J.G.G.,*
604 U.S. 670 (2025) ................................................... 36

*U.S. ex rel. Knauff v. Shaughnessy,*
338 U.S. 537 (1950) ................................................... 34

*Vartelas v. Holder,*
566 U.S. 257 (2012) .................................................. 5, 6

*Washington v. Glucksberg,*
521 U.S. 702 (1997) ............................................. 3, 22, 23

*Washington v. Harper,*
494 U.S. 210 (1990) ............................................... 20, 39

*Wong Wing v. United States,*
163 U.S. 228 (1896) ................................................... 25

*Zadvydas v. Davis,*
*533 U.S. 678 (2001).* ........................................ 25, 26, 29

## ADMINISTRATIVE DECISIONS

*Matter of Yajure Hurtado,*
29 I. & N. Dec. 216 (BIA 2025) .............................. 5, 6, 11

## STATUTES

### Immigration and Nationality Act of 1952, as amended:

Section 101(a)(13)
8 U.S.C. §1101(a)(13) ................................................. 5

Section 101(a)(13)(A)
8 U.S.C. §1101(a)(13)(A) ............................................. 7

Section 101(a)(13)(B)
  8 U.S.C. §1101(a)(13)(B) .......................................................12, 36

Section 212(a)(7)(A)(i)(I)
  8 U.S.C. §1182(a)(7)(A)(i)(I)................................................12

Section 212(d)(5)
  8 U.S.C. §1182(d)(5).........................................................11, 12

Section 212(d)(5)(A)
  8 U.S.C. §1182(d)(5)(A) ................................................... 9, 36

Section 235(a)
  8 U.S.C. §1225(a) ............................................................ 5, 6

Section 235(a)(1)
  8 U.S.C. §1225(a)(1)...................................................... 1, 8, 20

Section 235(b)
  8 U.S.C. §1225(b) ....................................................... 6, 10, 11

Section 235(b)(1)
  8 U.S.C. §1225(b)(1).........................................................8, 32

Section 235(b)(1)(B)(ii)
  8 U.S.C. §1225(b)(1)(B)(ii).................................................... 8

Section 235(b)(2)
  8 U.S.C. §1225(b)(2) ......................................................... 8

Section 235(b)(2)(A)
  8 U.S.C. §1225(b)(2)(A) ............................................... 1, <u>passim</u>

Section 235(b)(2)(C)
  8 U.S.C. §1225(b)(2)(C) ..................................................... 9

Section 236(a)
  8 U.S.C. §1226(a) ........................................................... 11

Section 236(a)(1)
  8 U.S.C. §1226(a)(1) ........................................................................... 9

Section 236(a)(2)
  8 U.S.C. §1226(a)(2) ........................................................................... 9

Section 236(c)
  8 U.S.C. §1226(c) ......................................................... 10, 26, 28, 30

Section 236(c)(1)
  8 U.S.C. §1226(c)(1) ........................................................................ 10

Section 236(c)(4)
  8 U.S.C. §1226(c)(4) ........................................................................ 10

Section 237
  8 U.S.C. §1227 ................................................................................... 11

Section 240
  8 U.S.C. §1229a .......................................................................... 8, 12

Section 242(a)
  8 U.S.C. §1252(a) ............................................................................... 6

## **<u>REGULATIONS</u>**

8 C.F.R. § 236.1(c)(8) ............................................................................ 10

8 C.F.R. § 236.1(d) ................................................................................ 10

8 C.F.R. § 236.1(d)(1) ............................................................................. 9

8 C.F.R. § 1003.19 ................................................................................. 10

8 C.F.R. § 1236.1(d)(1) .......................................................................... 10

# INTRODUCTION

The Immigration and Nationality Act, as amended, provides that all aliens who are present in the United States and not admitted are deemed to be "applicants for admission" and "shall be detained" pending their removal proceedings if they are "not clearly and beyond a doubt entitled to be admitted." 8 U.S.C. §1225(a)(1), (b)(2)(A). Detention under §1225(b)(2)(A) is mandatory, so aliens are not entitled to bond hearings. *Jennings v. Rodriguez*, 583 U.S. 281, 297, 300 (2018).

Over the last several months, numerous habeas petitions have been filed in district courts within this Circuit by aliens who are "applicants for admission" and were being detained under §1225(b)(2)(A) without bond hearings. Many district courts granted those petitions, holding that the aliens' detentions were governed by the separate authority in 8 U.S.C. §1226(a), which permits bond hearings. This Court rejected that interpretation in *Avila v. Bondi*, 170 F.4th 1128 (8th Cir. 2026).

Despite *Avila*, district courts, including the court below, have relied on a different theory—procedural due process—to require the Government to provide bond hearings to justify detention of aliens who are indisputably subject to detention under §1225(b)(2)(A). This theory, too, is foreclosed. Petitioner does not seek additional process as to whether he is an "applicant

for admission" or "entitled to be admitted"—*i.e.*, as to whether he falls within the terms of §1225(b)(2)(A).  Instead, he sought a bond hearing and the district court held that procedural due process prohibits the Government from detaining him under §1225(b)(2)(A) without a hearing to assess whether detention is justified—*e.g.*, because he is a flight risk or dangerous.  But Petitioner has no procedural due process right to such a hearing.  As the Supreme Court has held, "Plaintiffs who assert a right to a hearing under the Due Process Clause must show that the facts they seek to establish in that hearing are relevant under the statutory scheme." *Conn. Dep't of Pub. Safety v. Doe*, 538 U.S. 1, 9 (2003).  Whether Petitioner is a flight risk or dangerous is irrelevant to whether §1225(b)(2)(A) applies, so a bond hearing to assess those issues would be "a bootless exercise." *Id*. at 7-8.

In reality, Petitioner is not challenging the procedures available under the statute, but rather Congress's substantive determination that aliens covered by §1225(b)(2)(A) must be detained without a bond hearing.  That claim sounds in substantive due process, but Petitioner has not attempted to (and cannot) satisfy the standard for a substantive due process claim.  And the district court never held that he did.

Nor could he.  Petitioner's detention pending his removal proceedings does not implicate any fundamental right that is "objectively, deeply rooted

in this Nation's history and tradition," so his substantive due process claim fails so long as mandatory detention under §1225(b)(2)(A) is "rationally related to legitimate government interests." *Washington v. Glucksberg*, 521 U.S. 702, 728 (1997). It plainly is. "The rule has been clear for decades: '[d]etention during deportation proceedings [i]s ... constitutionally valid." *Banyee v. Garland*, 115 F.4th 928, 931 (8th Cir. 2024) (quoting *Demore v. Kim*, 538 U.S. 510, 523 (2003)).

Even if Petitioner were asserting a cognizable procedural due process claim, it would have no merit. The only process due aliens, like Petitioner, who have never "been admitted into the country pursuant to law" is whatever process is "expressly conferred by Congress." *DHS v. Thuraissigiam*, 591 U.S. 103, 138 (2020). There is no dispute that Petitioner has received that process. As a result, the balancing test under *Mathews v. Eldridge*, 424 U.S. 319 (1976), has no role to play.

In the end, Petitioner's and the district court's attempts to sidestep *Avila* must fail. His putative procedural due process claim is directed at the substance of Congress' policy choice to require detention of applicants for admission under §1225(b)(2)(A), and that policy choice easily survives rational basis review. This Court should reverse.

## STATEMENT OF JURISDICTION

The district court had jurisdiction under 28 U.S.C. §§1331 and 2241. The district court granted the petition for habeas corpus on April 27, 2026. App. 64-77; R. Doc. 1-14. Respondents filed their notice of appeal on May 28, 2026. R. Doc. 9. This Court has jurisdiction under 28 U.S.C. §§1291 and 2253(a).

<h1 style="text-align:center">STATEMENT OF THE ISSUE</h1>

Whether the Due Process Clause of the Fifth Amendment requires the government to provide aliens subject to mandatory detention under 8 U.S.C. §1225(b)(2)(A) with bond hearings to justify their detention pending removal proceedings.

*Relevant Authorities*:

*Connecticut Department of Public Safety v. Doe*, 538 U.S. 1 (2003)

*Demore v. Kim*, 538 U.S. 510 (2003)

*DHS v. Thuraissigiam*, 591 U.S. 103 (2020)

*Banyee v. Garland*, 115 F.4th 928 (8th Cir. 2024)

<h1 style="text-align:center">STATEMENT OF THE CASE</h1>

## I. Statutory Framework

### A. The pre-1996 immigration laws gave preferential treatment—including bond hearings—to aliens who entered the United States unlawfully.

Prior to 1996, the INA treated aliens differently based on whether they presented at a port of entry or evaded inspection and illegally entered the United States. *Buenrostro-Mendez v. Bondi*, 166 F.4th 494, 498 (5th Cir. 2026) (citing 8 U.S.C. §§1225(a), 1251(a) (1994)); *see Matter of Yajure Hurtado*, 29 I. & N. Dec. 216, 222-24 (BIA 2025) (citing 8 U.S.C. §§1225(a), 1251(a) (1994)). "Entry" referred to "any coming of an alien into the United States," 8 U.S.C. §1101(a)(13) (1994), and whether an alien had physically

5

entered the United States "dictated [both] what type of [removal] proceeding applied," *Hing Sum v. Holder*, 602 F.3d 1092, 1099 (9th Cir. 2010), and whether the alien would be detained pending those proceedings, *Buenrostro-Mendez*, 166 F.4th at 498.[1]

At the time, the INA provided for two types of removal proceedings: "deportation hearings and exclusion hearings. *Vartelas v. Holder*, 566 U.S. 257, 261 (2012). An alien who arrived at a port of entry would be placed in "exclusion proceedings and subject to mandatory detention, with potential release solely by means of a grant of parole." *Yajure Hurtado*, 29 I. & N. Dec. at 223; *see also* 8 U.S.C. §§1225(a)-(b), 1226(a) (1994). In contrast, an alien who evaded inspection and entered the United States would be placed in deportation proceedings. *Yajure Hurtado*, 29 I. & N. Dec. at 223; *see also Vartelas*, 566 U.S. at 261. Aliens in deportation proceedings, unlike those in exclusion proceedings, "were entitled to request release on bond." *Buenrostro-Mendez*, 166 F.4th at 498; *see Yajure Hurtado,* 29 I. & N. Dec. at 223 (citing 8 U.S.C. §1252(a)(1) (1994)).

---

[1] Aliens who arrive at a port of entry have technically "entered" the United States physically, but under the longstanding "entry fiction" doctrine, "aliens who arrive at a port of entry … are treated for due process purposes as if stopped at the border." *Thuraissigiam,* 591 U.S. at 139.

Thus, the INA's prior framework distinguishing between aliens based on "entry" had:

> the 'unintended and undesirable consequence' of having created a statutory scheme where aliens who entered without inspection 'could take advantage of the greater procedural and substantive rights afforded in deportation proceedings,' including the right to request release on bond, while aliens who had 'actually presented themselves to authorities for inspection' … were subject to mandatory custody.

*Yajure Hurtado*, 29 I. & N. Dec. at 223; H.R. Rep. No. 104-469, pt. 1, at 225 (1996) ("House Rep.") (similar).

### B. IIRIRA eliminated the preferential treatment of aliens who unlawfully entered the United States and mandated detention of "applicants for admission."

Congress discarded that prior regime through enactment of the Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA"), Pub. L. 104-208, 110 Stat. 3009 (Sept. 30, 1996). Among other things, IIRIRA sought to "ensure[] that all immigrants who have not been lawfully admitted, regardless of their physical presence in the country, are placed on equal footing in removal proceedings under the INA." *Avila*, 170 F.4th at 1135-36 (quoting *Torres v. Barr*, 976 F.3d 918, 928 (9th Cir. 2020) (en banc)); *accord Buenrostro-Mendez*, 166 F.4th at 499 (noting that IIRIRA "aimed to reduce this incongruity" of treatment).

To that end, IIRIRA replaced the prior focus on physical "entry," instead making "admission" the touchstone of the removal process. IIRIRA

defined "admission" to mean "the *lawful* entry of the alien into the United States after inspection and authorization by an immigration officer." 8 U.S.C. §1101(a)(13)(A) (emphasis added). Now, the "pivotal factor in determining an alien's status" is "whether or not the alien has been *lawfully* admitted." House Rep., *supra*, at 225 (emphasis added).

IIRIRA effected these changes through several provisions codified in Title 8.

**Section 1225(a):** Section 1225(a) codifies Congress's decision to make "admission," rather than physical entry, the touchstone. That provision states that an alien "present in the United States who has not been admitted or who arrives in the United States" "shall be deemed … an applicant for admission":

> An alien present in the United States who has not been admitted or who arrives in the United States (whether or not at a designated port of arrival and including an alien who is brought to the United States after having been interdicted in international or United States waters) shall be deemed for purposes of this chapter an applicant for admission.

8 U.S.C. §1225(a)(1).

**Section 1225(b):** IIRIRA also provided for expedited removal and "Section 240" proceedings (8 U.S.C. §1229a) and mandated that applicants for admission be detained pending those proceedings. 8 U.S.C. §1225(b)(1)-(2). Section 1225(b)(1) lays out a framework for the detention and removal

of aliens processed for expedited removal proceedings.  *See Jennings*, 583 U.S. at 297 (explaining that 8 U.S.C. §1225(b)(1)(B)(ii) "mandate[s] detention").

Section 1225(b)(2) "operates as a catchall provision that applies to all applicants for admission not covered by subsection (b)(1)."  *Jennings v. Rodriguez*, 583 U.S. 281, 287 (2018).  That provision requires that those aliens be detained pending Section 1229a removal proceedings:

> Subject to subparagraphs (B) and (C), in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a.

8 U.S.C. §1225(b)(2)(A).[2]

While Section 1225(b) does not allow for aliens to be released on bond, the INA grants the Department of Homeland Security ("DHS") discretion to exercise its parole authority to temporarily release an applicant for admission, but "only on a case-by-case basis for urgent humanitarian reasons or significant public benefit."  8 U.S.C. §1182(d)(5)(A); *see Buenrostro-Mendez*, 166 F.4th at 499 n.3.

---

[2]  Section 1225(b)(2)(A) does not apply to (1) aliens subject to expedited removal; (2) crewmen; or (3) stowaways.  8 U.S.C. §1225(b)(2)(B).  In addition, the Executive has discretion to return aliens arriving on land from a contiguous territory pending removal proceedings.  *Id.* §1225(b)(2)(C).

**Section 1226:** IIRIRA also created a separate authority addressing the arrest, detention, and release of aliens generally (not "applicants for admission" specifically). Section 1226 provides that "[o]n a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. §1226(a).

Detention under §1226(a) is generally discretionary. The Attorney General "may" either "continue to detain the arrested alien" or release the alien on bond or conditional parole. 8 U.S.C. §1226(a)(1)-(2). In practice, DHS makes an initial custody determination. 8 C.F.R. §236.1(d)(1). The alien may then seek custody redetermination—a bond hearing—before an immigration judge and can appeal the immigration judge's custody determination to the Board of Immigration Appeals. 8 C.F.R. §§236.1(c)(8), (d), 1236.1(d)(1), 1003.19.

That discretion does not extend to certain aliens. *Jennings*, 583 U.S. at 288. Section 1226(c) provides that "[t]he Attorney General shall take into custody" certain aliens who are inadmissible or deportable because they (1) "committed" certain offenses; or (2) engaged in terrorism-related activities. 8 U.S.C. §1226(c)(1). Such aliens may be released only if "release of the alien from custody is necessary" to protect a witness to a "major

criminal activity" or a similar person, and then only if the alien "will not pose a danger" to public safety and is not a flight risk. *Id*. §1226(c)(4). Congress recently amended §1226(c) through the Laken Riley Act, Pub. L. No. 119-1, §2, 139 Stat. 3 (2025), to expand the categories of aliens subject to §1226(c).

**C.    The government applies §1225(b)(2)(A)'s requirement that all "applicants for admission" be detained pending removal proceedings.**

For many years after IIRIRA, DHS and most immigration judges treated aliens who entered the United States without admission and were later detained as being subject to discretionary detention under 8 U.S.C. §1226(a), rather than mandatory detention under 8 U.S.C. §1225(b). *Yajure Hurtado*, 29 I. & N. Dec. at 225 n.6; *see Buenrostro-Mendez*, 166 F.4th at 500.

On July 8, 2025, DHS "revisited its legal position on detention and release authorities" and issued interim guidance that brought the Executive's practices in line with the statute's plain text. *See, e.g.*, Todd M. Lyons, Acting Director of U.S. Immigration and Customs Enforcement, *Interim Guidance Regarding Detention Authority for Applicants for Admission* (July 8, 2025). Specifically, DHS concluded that applicants for admission "are subject to detention under INA §235(b) [8 U.S.C. §1225(b)] and may not be released from ICE custody except by INA §212(d)(5) [8 U.S.C. §1182(d)(5)] parole."

*Id.* As a result, the "only aliens eligible for a custody determination and release on recognizance, bond, or other conditions under the INA §236(a) [8 U.S.C. §1226(a)] are aliens admitted to the United States and chargeable with deportability under INA §237 [8 U.S.C. §1227]." *Id.*

The Board also adopted this same interpretation in *Yajure Hurtado*, 29 I. & N. Dec. 216.

### D. This Court held that §1225(b)(2)(A) mandates detention of all applicants for admission.

In *Avila*, this Court addressed the proper interpretation of §1225(b)(2)(A). The Court held that under the plain text of the statute, aliens who are present in the United States without admission are "applicants for admission" who are "seeking admission" under §1225(b)(2)(A). 170 F.4th at 1135-37. Therefore, those aliens are subject to mandatory detention, without the option for release on bond. *Id.*

## II. Factual Background and Procedural History

Petitioner is a citizen of Russia who entered the United States at the Brownsville, Texas, port of entry in February 2023 and was granted a limited, one-year period of humanitarian parole that expired on February 3, 2024.[3] App. 34, 64-66; R.Doc. 14-3 at 2; R. Doc. 19, at 1-3. On November 13, 2025—

---

[3] Parole does not constitute an admission into the United States under the INA. *See* 8 U.S.C. §§1101(a)(13)(B), 1182(d)(5).

more than a year after Petitioner's parole expired—South Dakota Highway Patrol encountered Petitioner as part of a traffic stop and subsequently turned him over to DHS. App. 26-27; R. Doc. 14, at 1-2. Petitioner was detained pursuant to the mandatory detention provisions of §1225(b)(2)(A). App. 10, 63; R. Doc. 13, at 3; R. Doc. 18, at 406.

DHS charged Petitioner as being removable as an alien present in the United States who was not in possession of a valid entry document at the time of application for admission under 8 U.S.C. §1182(a)(7)(A)(i)(I), and placed him into removal proceedings under 8 U.S.C. §1229a. App. 28-31; R. Doc. 14, at 3-6. An Immigration Judge ordered Morozov removed on March 18, 2026; his appeal to the Board of Immigration Appeals is currently pending. *See* Executive Office for Immigration Review, Automated Case Information System.[4]

On March 30, 2026, Morozov filed a petition for a writ of habeas corpus in which he asserted, in relevant part, that his mandatory detention without access to a bond hearing violates due process. App. 1-4; R. Doc. 1, at 1-4. On April 27, 2026, the district court granted Morozov's habeas petition in part on procedural due process grounds and ordered Respondents to release him from custody. App. 77; R. Doc. 19, at 14. The court acknowledged

---

[4] https://acis.eoir.justice.gov/en/caseInformation.

this Court's decision in *Avila* but found that the decision only addressed the statutory right to a bond hearing and not the constitutional due-process claim raised by Petitioner. App. 69-75; R. Doc. 19, at 7-12. Accordingly, the court applied the three-factor test from *Mathews*, 424 U.S. 319, and held that Petitioner was entitled to a bond hearing as a matter of procedural due process. App. 73-76; R. Doc. 19, at 10-13. Because Petitioner had not received such a hearing, the Court ordered that Petitioner be immediately released from DHS custody, which occurred on April 28, 2026. App. 78-79; R. Doc. 20, at 1-2.

## SUMMARY OF ARGUMENT

This Court in *Avila v. Bondi*, 170 F.4th 1128 (8th Cir. 2026), held that §1225(b)(2)(A) mandates detention of applicants for admission, without bond hearings to assess whether detention is justified. The district court, however, held that such a hearing is required as a matter of procedural due process. This, too, was error and the Court should reverse.

**I.** Petitioner's procedural due process claim fails. Section 1225(b)(2)(A) mandates detention of "applicants for admission" who have not shown they are "clearly and beyond a doubt entitled to be admitted." Petitioner does not dispute that he falls within the statutory parameters. Instead, he argues that he is entitled to a bond hearing to assess whether he

14

is a flight risk or dangerous—criteria that are irrelevant under the terms of §1225(b)(2)(A).

That is not a cognizable claim of procedural due process. An alien "who asserts a right to a hearing under the Due Process clause must show that the facts they seek to establish in that hearing are relevant under the statutory scheme." *Conn. Dep't of Pub. Safety v. Doe*, 538 U.S. 1, 8 (2003) (emphasis added). An alien's flight risk or dangerousness are irrelevant to the application of §1225(b)(2)(A), and so a hearing on those issues would be a "bootless exercise." *Id.* Petitioner is thus not asserting a cognizable *procedural* due process claim but rather a substantive claim erroneously clad in procedural garb.

Even if it were otherwise, any procedural due process claim would be meritless. Under longstanding precedent, for aliens who have never "been admitted into the country pursuant to law, the decisions of executive and administrative officers, acting within the powers expressly conferred by Congress, are due process of law." *Thuraissigiam*, 591 U.S. at 138. Petitioner has received all the process he is entitled to under the statute; the Due Process Clause requires nothing more.

**II.** Ultimately, Petitioner is not challenging the procedures used to determine if he is subject to the detention mandate of §1225(b)(2)(A);

instead, he is challenging Congress's substantive decision to mandate detention pending removal proceedings. That *substantive* due process claim also is meritless. Congress's decision to mandate detention pending removal proceedings does not implicate any fundamental rights, and it easily satisfies rational basis review. The Supreme Court has long "recognized detention during deportation proceedings as a constitutionally valid aspect of the deportation process," because "deportation proceedings 'would be vain if those accused could not be held in custody pending the inquiry into their true character.'" *Demore*, 538 U.S. at 523. This Court has, too. *See Banyee*, 115 F.4th 928.

*Demore* and *Banyee* squarely control Petitioner's substantive due process claim here and require reversal.

## ARGUMENT

## STANDARD OF REVIEW

This Court reviews de novo a district court's grant or denial of a petition for a writ of habeas corpus under 28 U.S.C. §2241. *Avila*, 170 F.4th at 1132.

**I. Petitioner's claim sounds in substantive due process and fails under rational basis review.**

There is no dispute that Petitioner falls within the scope of §1225(b)(2)(A). He is an "alien" who is "present in the United States" and "has not been admitted," and so is an "applicant for admission." 8 U.S.C.

§1225(a)(1).  Moreover, Petitioner did not show that he is "clearly and beyond a doubt entitled to be admitted." *Id.* §1225(b)(2)(A).  Therefore, as this Court held in *Avila*, he "shall be detained" pending his removal proceedings.  *Id.*

The district court acknowledged that Petitioner is subject to mandatory detention under §1225(b)(2)(A).  App. 70, 72; R. Doc. 19 at 7, 9.  Nonetheless, the court held that Petitioner is entitled to release from DHS custody as a matter of procedural due process.  App. 73-76; R. Doc. 19 at 10-13.  That was error.  Petitioner's claim does not sound in procedural due process.  And even if it did, it is meritless.

### A. Procedural due process does not entitle Petitioner to a hearing to determine facts that are irrelevant to §1225(b)(2)(A).

The Constitution prohibits the government from "depriv[ing]" a "person" of "life, liberty, or property, without due process of law." U.S. Const. Amend. V.  The Supreme Court has recognized two types of due-process claims: procedural and substantive. *Department of State v. Muñoz*, 602 U.S. 899, 910 (2024).  A procedural due process claim takes as a given the substantive determinations that would justify a deprivation of life, liberty, or property, but challenges the "adequacy of the[] procedures" for making those determinations. *Mathews*, 424 U.S. at 335.  For example, the statute in *Mathews* made the availability of disability benefits depend on whether a

person is "completely disabled" within the meaning of the statute. *Id.* at 323, 336. The procedural due process claim in that case did not challenge the statute's substantive criteria for who may receive benefits, but rather the adequacy of the procedures available to test whether a person fits those criteria. *Id.* at 325-26. By contrast, a substantive due process claim challenges the substance of the determinations themselves as being inadequate to justify the deprivation "*at all*, no matter what process is provided." *Reno v. Flores*, 507 U.S. 292, 302 (1993).

1. Petitioner has not challenged the process for determining whether an alien is an "applicant for admission" as a factual matter, or whether an alien is "clearly and beyond a doubt entitled to be admitted." 8 U.S.C. §1225(b)(2)(A). Instead, he argued (and the district court held) that a determination that he satisfies the statutory criteria is constitutionally insufficient to justify the deprivation of his liberty (*i.e.*, detention). App. 74-76; R. Doc. 19 at 10-12. But no other criteria are relevant under the terms of §1225(b)(2)(A). The district court's due process theory and Petitioners' claim thus do not take §1225(b)(2)(A)'s substantive determinations as a given but challenge the lawfulness of those determinations as being inadequate to justify detention "*at all*, no matter what process is provided."

*Flores*, 507 U.S. at 302. That is a substantive, not procedural, due process challenge.

The Supreme Court's decision in *Connecticut Department of Public Safety v. Doe*, 538 U.S. 1 (2003), is definitive on this point. The statute in that case required sex offenders to register with the State so their information could be published on a sex-offender registry. *Id*. at 4-5. Doe, who had previously been convicted of a sex offense, claimed that the statute violated his procedural due process rights by requiring him to register without a "hearing to determine whether" he was "currently dangerous." *Id*. at 4 (citation omitted). The Court rejected that claim. It explained that "due process does not require the opportunity to prove a fact that is not material to the State's statutory scheme," and "the fact that [Doe] seeks to prove—that he is not currently dangerous—[wa]s of no consequence under" the relevant statute, which required him to register based on his prior conviction alone. *Id*. at 7. "Unless [Doe] c[ould] show that that substantive rule of law [wa]s defective (by conflicting with the Constitution), any hearing on current dangerousness [would be] a bootless exercise." *Id*. at 8.

The rule of *Doe* is straightforward: "Plaintiffs who assert a right to a hearing under the Due Process Clause must show that the facts they seek to establish in that hearing are relevant under the statutory scheme." 538 U.S.

at 9. A claim that a plaintiff is entitled to a hearing to adjudicate facts a legislature had not made relevant "'must ultimately be analyzed' in terms of substantive, not procedural, due process." *Id.* at 7-8.

*Doe* broke no new ground. Instead, it merely applied the Supreme Court's existing jurisprudence delineating procedural and substantive due process claims. For example, *Reno v. Flores*, 507 U.S. 292 (1993), addressed a challenge to a regulation governing when unaccompanied juvenile aliens may be released pending removal proceedings. *Id.* at 296-300. The plaintiffs alleged that the regulation's procedures were "unconstitutional because [they] do[] not require" the Executive "to determine in the case of each individual alien juvenile that detention … would better serve the interests than release to some other 'responsible adult.'" *Id.* at 308. The Court rejected this argument as "just [a] substantive due process' argument recast in 'procedural due process' terms." *Id.*; *see also Washington v. Harper*, 494 U.S. 210, 219-20 (1990) (recognizing that judicial decision "requir[ing] a different set of determination than those set forth" in the challenged policy rested on "substantive" due process); *Michael H. v. Gerald D.*, 491 U.S. 110, 119, 121 (1989) (plurality opinion) (treating a request for an "evidentiary hearing" on an issue that the statutory scheme deemed "irrelevant" as a "substantive due process" claim).

**2.** Under *Doe*, Petitioner has no procedural due process right to a bond hearing. Congress decided as a substantive policy matter to impose mandatory detention on aliens, like Petitioner, based on their status as "applicants for admission" who are not "clearly and beyond a doubt entitled to be admitted" alone. 8 U.S.C. §1225(a)(1), (b)(2)(A); *see supra*, pp. 8-9. Whether an alien is a flight risk or dangerous is irrelevant under the terms of §1225(b)(2)(A). *See Lopez-Campos v. Raycraft*, 175 F.4th 713, 761 (6th Cir. 2026) (Murphy, J., dissenting) ("[T]he statute requires their detention *whether or not* an adjudicator would make these individualized findings."). Therefore, Petitioner has no procedural due process right to a bond hearing "to assess whether he should be detained during the pendency of his removal proceedings." App. 74; R. Doc. 19 at 11; *see Lopez-Campos*, 175 F.4th at 761 (Murphy, J., dissenting) (applicants for admission "do not have a procedural right to prove facts at a hearing that the law renders *irrelevant* to their detention" (citing *Doe*, 538 U.S. at 7-8)). As in *Doe*, any claim that Petitioner is entitled to a bond hearing "'must ultimately be analyzed' in terms of substantive, not procedural, due process." 538 U.S. at 7-8.

To be sure, the court below held that due process required additional procedures in the form of a bond hearing. App. 74, 76; R. Doc. 19 at 11, 13. But a bond hearing is merely the vehicle for making the *substantive*

determination about "whether [Petitioner] should be detained" that the district courts believed to be necessary to justify Petitioners' detention, even though no other factor is relevant under §1225(b)(2)(A). App. 74; R. Doc. 19 at 11. Because §1225(b)(2)(A) does not require such determination, however, Petitioners' claim is a substantive due process challenge, not a procedural one.

It follows that the district courts' reliance on *Mathews* to evaluate Petitioner's claim was erroneous. App. 73-76; R. Doc. 19 at 10-13. *Mathews* articulates a three-part balancing test for analyzing certain "procedural due process" claims. *Nelson v. Colorado*, 581 U.S. 128, 134 (2017). But that test has no application in the realm of substantive due process. Again, *Mathews* takes the "nature of the relevant inquiry" as given and asks only whether the "procedures" for conducting that factual inquiry are adequate. 424 U.S. at 335, 343. Here, in stark contrast, Petitioner contends (and the district court held) that the Constitution requires a different factual inquiry altogether— *i.e.*, one that evaluates factors that Congress intentionally made irrelevant to the detention issue. Because that is a substantive, rather than procedural, due process challenge, the district court erred in applying *Mathews*.

**B. Petitioner does not have a substantive due process right to a bond hearing to justify his detention pending removal proceedings.**

Petitioner's claim thus sounds in substantive due process. To proceed on such a claim, a plaintiff "must begin with a careful description of the asserted right," *Flores*, 507 U.S. at 302, and can prevail only if that carefully described right is "'objectively, deeply rooted in this Nation's history and tradition.'" *Muñoz*, 602 U.S. at 910 (quoting *Glucksberg*, 521 U.S. at 720-21). If that standard is met, then the statute will be invalid "unless [it] is narrowly tailored to serve a compelling state interest." *Flores*, 507 U.S. at 302. If that standard is not met, however, the substantive due process challenge fails so long as the statute is "rationally related to legitimate government interests." *Glucksberg*, 521 U.S. at 728.

**1. Petitioner's substantive due process claim is subject to rational basis review.**

Petitioner's detention without a bond hearing for the duration of his removal proceedings does not implicate any fundamental right, and so does not trigger heightened scrutiny. After all, there is no right that is "objectively, deeply rooted in this Nation's history and tradition" for an unadmitted alien, like Petitioner, to remain at large *in the United States* during removal proceedings. *Lopez-Campos*, 175 F.4th at 760-61 (Murphy, J., dissenting) (concluding that unadmitted aliens' "substantive due-process claims fail

once we articulate a 'careful description' of the[] proposed right" (quoting *Flores*, 507 U.S. at 302)).  Indeed, "prior to 1907 there was no provision permitting bail for any aliens during the pendency of their deportation proceedings."  *Demore*, 538 U.S. at 523 n.7.  Accordingly, because Petitioner's detention does not implicate any fundamental right, his substantive due process challenge to detention under §1225(b)(2)(A) must be evaluated under rational-basis review.  *Glucksberg*, 521 U.S. at 728.[5]

> **2.  The Supreme Court and this Court have repeatedly rejected substantive due process challenges to mandatory detention in the immigration context.**

Section 1225(b)(2)(A) "easily clears" rational basis review.  *Rodriguez v. Ortega*, ---F.4th---, 2026 WL 1906557, at *28 (5th Cir. July 2, 2026) (Wilson, J., dissenting), *reh'g en banc granted, opinion vacated*, No. 26-50183, 2026 WL 2014647 (5th Cir. July 10, 2026).[6]  The Supreme Court has

---

[5] The outcome is the same even if *Glucksberg*'s framework did not apply, because an alien's right to liberty must also be considered in context of the basic rule that "in the exercise of its broad power over naturalization and immigration, Congress regularly makes rules that would be unacceptable if applied to citizens," including with respect to detention.  *Mathews v. Diaz*, 426 U.S. 67, 79-80 (1976).

[6] On July 2, 2026, a panel of the Fifth Circuit issued a splintered decision holding that mandatory detention under §1225(b)(2)(A) violates the Due Process Clause, except for the first 90 days of detention.  *Rodriguez*, 2026 WL 1906557, at *16.  On July 10, the Fifth Circuit sua sponte ordered that those consolidated cases be reheard en banc and vacated the panel opinion.  *See Rodriguez*, 2026 WL 2014647, at *1.

repeatedly upheld the constitutionality of immigration detention pending removal proceedings, and "no Supreme Court case [has] raised due-process concerns" with such detention. *Lopez-Campos*, 175 F.4th at 760 (Murphy, J., dissenting).

**a.** In *Demore*, the Supreme Court considered a "substantive due process" challenge to detention under §1226(c). 538 U.S. at 515. Like Petitioner here, the petitioner in *Demore* "argued that his detention under §1226(c) violated due process because the [government] had made no determination that he posed either a danger to society or a flight risk." *Id.* at 514. The Court rejected that claim. It explained that its cases had long "recognized detention during deportation proceedings as a constitutionally valid aspect of the deportation process." *Id.* at 523; *see also id.* at 526 (reiterating the "Court's longstanding view that the Government may constitutionally detain deportable aliens during the limited period necessary for their removal proceedings"). That detention, the Court explained, serves the legitimate objective of "preventing deportable criminal aliens from fleeing prior to or during their removal proceedings, thus increasing the chance that, if ordered removed, the aliens will be successfully removed." *Id.* at 528. After all, "deportation proceedings 'would be vain if those accused could not be held in custody pending'" a decision on removability. *Id.* at 523

(quoting *Wong Wing v. United States*, 163 U.S. 228, 235 (1896)). Therefore, because "[d]etention during removal proceedings is a constitutionally permissible part of that process," the Court held that the aliens' substantive due process "claim must fail." *Id.* at 531.

*Demore* also distinguished the Court's prior decision in *Zadvydas*, 533 U.S. at 693, which addressed the constitutionality of *indefinite* detention under a different provision of the INA (§1231) that applies to aliens with final orders of removal. *Id.* at 682, 690, 692. First, the aliens challenging their detention in *Zadvydas* were aliens for whom removal was "no longer practically attainable." 533 U.S. at 690. Under the circumstances, the Court explained, "the detention … did not serve its purported immigration purpose." *Id.* By contrast, §1226(c) applies to aliens "pending their removal proceedings," and so "necessarily serves the purpose of preventing" those aliens "from fleeing prior to or during their removal proceedings, thus increasing the chance that, if ordered removed, the aliens will be successfully removed." *Demore*, 538 U.S. at 528. As *Demore* noted, Congress "had before it evidence suggesting that permitting discretionary release of aliens pending their removal hearings" would result in "large numbers" of aliens "skipping their hearings and remaining at large in the United States unlawfully." *Id.* at 528.

Second, and in the same vein, *Demore* emphasized that "the period of detention at issue in *Zadvydas* was 'indefinite' and 'potentially permanent,'" whereas detention under §1226(c) pending removal proceedings "is of a much shorter duration" and "ha[s] a definite termination point." *Demore*, 538 U.S. at 530; *accord Lopez-Campos*, 175 F.4th at 760 (Murphy, J., dissenting) (discussing *Demore*).

**b.** *Demore* broke no new ground. At least twice before, the Supreme Court approved mandatory detention of aliens without requiring individualized assessments. In *Carlson v. Landon*, 342 U.S. 524 (1952), the Court addressed a constitutional challenge to the detention, "without bail," of aliens who were deportable because of their Communist activities. *Id.* at 526-28, 542-44. Those aliens challenged their detention on the grounds that there had been no finding that they were flight risks or dangerous—and one of the plaintiffs had been found *not* dangerous. *Id.* at 531-32; *Demore*, 538 U.S. at 525 n.8. The Court held that the Government would detain those aliens solely "by reference to the legislative scheme," without any individualized determinations. *Carlson*, 342 U.S. at 543 (emphasis added); *see Demore*, 538 U.S. at 523-24 (discussing *Carlson*).

The Court applied the same rule in *Flores* to reject a substantive due process challenge by unaccompanied juvenile aliens to their detention

27

without individualized determinations. 507 U.S. at 299-300. Consistent with *Carlson*, the Court in *Flores* held that Congress may employ "reasonable presumptions and generic rules" when legislating with respect to aliens, rather than requiring individualized determinations made after judicial or administrative hearings. *Id.* at 305; *see Demore*, 538 U.S. at 526 (discussing *Flores*); *accord Lopez-Campos*, 175 F.4th at 760 (Murphy, J., dissenting) (discussing *Demore* and *Flores*).

**c.** Following this unbroken line of Supreme Court precedent, this Court in *Banyee* rejected a due process challenge to the duration of detention under §1226(c) in sweeping language that forecloses any due process challenge to mandatory detention of aliens pending removal proceedings. Relying on *Carlson*, *Flores*, and *Demore*, this Court held that "[t]he rule has been clear for decades: '[d]etention during deportation proceedings [i]s … constitutionally valid,'" with no requirement of "individualized findings of dangerousness or flight risk." 115 F.4th at 931, 932, 933. This Court recognized that *indefinite* detention would pose constitutional problems, but it rejected the argument that "length determines legality." *Id.* at 932. Instead, "what matters is that detention pending deportation 'ha[s] a definite termination point'—deporting or releasing the alien." *Id.* Thus, as long as

"deportation is still on the table," detention without a bond hearing is constitutionally permissible. *Id.* at 933.

### 3. Petitioner's substantive due process claim fails under rational basis review.

**a.** These precedents foreclose Petitioner's substantive due process challenge to mandatory detention under §1225(b)(2)(A). Detention under §1225(b)(2)(A) "satisfies the deferential rational-basis test" for the same reasons as detention under §1226(c): "It *categorically* 'serves the purpose of preventing [removable immigrants] from fleeing prior to or during their removal proceedings, thus increasing the chance that' *all* 'will be successfully removed.'" *Lopez-Campos*, 175 F.4th at 760 (Murphy, J., dissenting) (quoting *Demore*, 538 U.S. at 528). Moreover, "Congress's choice in [§1225(b)(2)(A)] to require detention … was firmly supported by the evidence in 1996 and remains a rational policy today." *Rodriguez*, 2026 WL 1906557, at *29 (Wilson, J., dissenting) (collecting sources). As the Fifth Circuit recognized in *Buenrostro-Mendez*, "the Department of Justice Inspector General found in 1997 that 'when aliens are released from custody, nearly 90 percent abscond and are not removed from the United States." 166 F.4th at 508 (quoting 62 Fed Reg. 10312, 10323 (Mar. 6, 1997)); *see* Office of Inspector General, INS, *Deportation of Aliens After Final Orders Have Been Issued* (Mar. 1996) ("OIG Report"), https://perma.cc/JA5M-VU8P. "That

situation exists today on a much larger scale." *Buenrostro-Mendez*, 166 F.4th at 508.

Congress was thus entitled to employ "reasonable presumptions and generic rules," *Flores*, 507 U.S. at 305, when legislating with respect to applicants for admission and their detention under §1225(b)(2)(A), just as when legislating with respect to the aliens addressed in *Demore*, *Flores*, and *Carlson*. And just as in *Demore*, detention under §1225(b)(2)(A) does not implicate any of the concerns underlying *Zadvydas*. Moreover, Petitioner does not allege that his ultimate removal is "unattainable." Nor is his detention under §1225(b)(2)(A) "indefinite" or "permanent." *Demore*, 538 U.S. at 530. As with §1226(c), detention under §1225(b)(2)(A) lasts only for the duration of "a proceeding under section 1229a of this title." 8 U.S.C. §1225(b)(2)(A); *see Jennings*, 583 U.S. at 297 ("Once [removal] proceedings end, detention under §1225(b) must end as well."). Removal thus remains a practically attainable goal, and as long as "deportation is still on the table," *Banyee*, 115 F.4th at 933, Petitioner's detention under §1225(b)(2)(A) bears a reasonable relation to the legitimate purposes identified in *Demore* and reiterated in *Banyee*.

**b.** The district court did not offer any sound basis for departing from this precedent. The court reasoned that *Demore* and *Banyee* do not

apply to §1225(b)(2)(A) because they "involved due process challenges brought by petitioners detained under 8 U.S.C. §1226(c)," which applies to criminal aliens who have received "the full procedural protections our criminal system offers" with respect to their underlying offenses. App. 72; R. Doc. 19 at 9 (quoting *Demore*, 538 U.S. at 514). *Demore*'s analysis did not turn on that feature; rather the Supreme Court based its holding on established precedent recognizing Congress's sweeping power to regulate in the context of immigration, 538 U.S. at 521-22, and "th[e] Court's longstanding view that the Government may constitutionally detain deportable aliens"—not just criminal aliens—"during the limited period necessary for their removal proceedings," *without* individualized assessments of flight risk or dangerousness, *id*. at 523-26. The same is true of *Banyee*: this Court rejected the due process claim there based on the decades-old "rule" that "[d]etention during deportation proceedings [i]s … constitutionally valid,'" 115 F.4th at 931—not because the alien had received due process for his underlying conviction. Indeed, *Demore*'s and *Banyee*'s reliance on *Carlson* and *Flores*—neither of which involved aliens with criminal convictions—refutes the district court's cramped reading of *Demore* and *Banyee*.

Separately, the district court relied on the fact that Petitioner originally had been paroled into the country, reasoning that "noncitizens maintain a strong liberty interest even when their parole status has expired." App. 74; R. Doc. 19 at 11. To start, whatever "strong liberty interest" Petitioner might have had as a result of temporary parole (App. 74; R. Doc. 19 at 11) expired along with the parole itself—at which point, he had no "right—let alone a fundamental right—to be present in the country" or at large pending his removal proceedings. *Lopez-Campos*, 175 F.4th at 760 (Murphy, J., dissenting); *see supra*, p. 20. If the district court's rationale were correct, then *Demore* and *Banyee* would have turned out differently. After all, those aliens had a much stronger "liberty interest" than Petitioner—both of them had been *admitted* to the United States as lawful permanent residents. *See Demore*, 538 U.S. at 513; *Banyee*, 115 F.4th at 930. Nonetheless, the Supreme Court and this Court upheld their detention, without bond hearings, as long as "deportation is still on the table." *Banyee*, 115 F.4th at 933. That same rule applies to Petitioner.

**c.** Petitioner's substantive due process challenge to mandatory detention under §1225(b)(2)(A) is thus foreclosed by Supreme Court and Eighth Circuit precedent. That suffices to reject it. But the sweeping consequences of adopting Petitioner's due process theory further supports

that outcome. His theory that mandatory detention without a bond hearing violates due process could be argued to require the facial invalidation, not only of §1225(b)(2)(A), but of other detention statutes. For example, §1225(b)(1) mandates detention of aliens subject to expedited removal, *see Jennings*, 583 U.S. at 302-03—a category that includes certain aliens arriving in the United States and those present in the United States for up to two years at the time of the determination of inadmissibility who have not been admitted or paroled, regardless of criminality. 8 U.S.C. §1225(b)(1). This statute does not require a bond hearing as a predicate for detention. Under Petitioner's theory, this statute, too, is facially unconstitutional.

*　　*　　*

Ultimately, this Court should reject Petitioner's effort to facially invalidate §1225(b)(2)(A) through a substantive due process challenge disguised as a procedural due process claim. The Supreme Court's decision in *Doe* governs the claims that sound in procedural due process and Petitioner's claims do not fit. And established Supreme Court precedents dispense with his substantive due process claim. The Court need decide no more than this to decide these appeals in the Government's favor.

## II. Even if Petitioner were asserting a cognizable procedural due process claim, it would be meritless.

Petitioner's claim fails even if it did sound in procedural due process. Under longstanding precedent, he is entitled only to the procedures Congress has provided in statute. And even if additional procedures were required, detention under §1225(b)(2)(A) without bond satisfies due process under any possible standard.

### A. Petitioner is entitled only to the procedures Congress has provided through statute.

1. For more than a century, the rule has been that for aliens who have never "been admitted into the country pursuant to law, the decisions of executive and administrative officers, acting within the powers expressly conferred by Congress, are due process of law." *Thuraissigiam*, 591 U.S. at 138 (quoting *Nishimura Ekiu v. United States*, 142 U.S. 651, 660 (1892)); *see also id.* ("'Whatever the procedure authorized by Congress is, it is due process as far as an alien denied entry is concerned.'" (quoting *U.S. ex rel. Knauff v. Shaughnessy*, 338 U.S. 537, 544 (1950)). This includes those who successfully evade inspection at the border: "[A]n alien who tries to enter the country illegally is treated as an 'applicant for admission'"—*i.e.*, treated the

same as if he lawfully presented himself at a port of entry or was caught at the border.  *Id.* at 140.[7]

The Supreme Court has long been clear that admission—not physical entry—is the touchstone for when aliens gain due process interests that could potentially require procedures beyond what Congress has provided. *Rodriguez*, 2026 WL 1906557, at *22 (Wilson, J., dissenting).  For example, in *Landon v. Plasencia*, 459 U.S. 21 (1982), the Court observed that only "*once an alien gains admission* to our country and begins to develop the ties that go with permanent residence [does] his constitutional status change[]." *Id.* at 32 (emphasis added).  "Th[is] rule," the Court has explained, "rests on [the] fundamental proposition[]" that "[t]he power to admit or exclude aliens is a sovereign prerogative," and "the Constitution gives 'the political department of the government' plenary authority to decide which aliens to admit."  *Thuraissigiam*, 591 U.S. at 139 (citing *Nishimura Ekiu*, 142 U.S. at 659).

Consistent with this rule, aliens who have been "paroled elsewhere in the country *for years* pending removal" and who have developed significant

---

[7] Although Thuraissigiam himself "was apprehended within 25 yards" of the border, the Supreme Court's reasoning in that case was not so limited. Rather, the Court "repeatedly emphasize[d] that admission status—not physical presence—determines what procedural rights are available to an alien."  *Rodriguez*, 2026 WL 1906557, at *22 (Wilson, J., dissenting).

ties to the country are "'treated' for due process purposes 'as if stopped at the border.'" *Thuraissigiam*, 591 U.S. at 139 (quoting *Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206, 215 (1953)); *accord Rodriguez*, 2026 WL 1906557, at *22 (Wilson, J., dissenting). For example, *Kaplan v. Tod*, 267 U.S. 228 (1925), held that a child paroled into the country for *nearly nine years*—but never admitted—must be "regarded as stopped at the boundary line" and "had gained no foothold in the United States." *Id.* at 230-31. That was so even though the child had been living in the interior of the country with her naturalized-citizen father and thus had presumably formed connections to the United States. *Id.* at 229.

**2.** The district court's theory of procedural due process is incompatible with this longstanding precedent. "[B]ecause Petitioner[] ha[s] never been lawfully admitted into the United States, the admission procedures provided by Congress in §1225(b)(2)(A) embody the due process to which [he is] entitled." *Rodriguez*, 2026 WL 1906557, at *24 (Wilson, J., dissenting). Although he was initially paroled into the country, "such parole of an alien shall not be regarded as an admission of the alien." 8 U.S.C. §1182(d)(5)(A); *see also* 8 U.S.C. §1101(a)(13)(B). Therefore, as in *Kaplan*, Petitioner must be "regarded as stopped at the boundary line," 267 U.S. at 230-31, and is entitled only to that process due under the §1225(b)(2)(A)—

36

which does not include a bond hearing.  That is "due process of law."

*Thuraissigiam*, 591 U.S. at 138.

**B.  Petitioner's procedural due process claim fails under any standard.**

Even if Petitioner had procedural due process rights beyond those provided by statute, his claim would still fail.  The district court applied *Mathews*, but that balancing test has no operation in the immigration context.  And even if it did, the *Mathews* factors favor the Government.

**1.**  *Mathews* has no application here.  That case did not announce a one-size-fits-all test for procedural due process claims, and in *Trump v. J.G.G.*, 604 U.S. 670 (2025), and *A.A.R.P. v. Trump*, 605 U.S. 91 (2025)—both cases adjudicating procedural due process claims by aliens—the Supreme Court declined to apply *Mathews* and instead applied the "less demanding standard" in *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306 (1950).  *Make the Road New York v. Mullin*, ---F.4th---, 2026 WL 1792978, at *13-18 (D.C. Cir. June 23, 2026) (applying *Mullane*, rather than *Mathews*, to evaluate procedural due process challenge to expedite removal); *see also id.* at *25 (Wilkins, J., concurring in part and dissenting in part) ("agree[ing] … that the standard for notice set forth in [*Mullane*], and not the balancing test established in [*Mathews*], governs Plaintiffs' constitutional due process claim").

Under *Mullane*, procedural due process requires "notice [that is] reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." 339 U.S. at 314. Unlike *Mathews*, which "invites courts to balance private interests against governmental interests and to prescribe 'additional … procedural safeguards" when the balance tips toward the individual," *Mullane* "does not ask whether additional procedures might reduce the risk of error." *Make the Road*, 2026 WL 12792978, at *13; *see also Dusenbery v. United States*, 534 U.S. 161, 167-68 (2002) (rejecting argument that due process requires the most effective notice practicable and holding that Mullane requires only notice "reasonably calculated" to inform). "*Mullane* does not ask what procedures would be better. It asks whether the provided procedures are adequate." *Make the Road*, 2026 WL 1792978, at *14.

Petitioner's procedural due process claim fails under *Mullane*. There is no dispute that he received "notice" of his removal proceedings, the charges of inadmissibility, and his detention. App. 28, 37, 63; R. Doc. 14-1, at 1; R. Doc. 14-4, at 3; R. Doc. 18-7. Nor is there any dispute that Petitioner has had (and continues to have) an "opportunity" to "present [his] objections" in his removal proceedings. He also had an opportunity to

38

demonstrate that he does not fall within the terms of §1225(b)(2)(A)—*i.e.*, that he is not an "applicant for admission" or that he is "clearly and beyond a doubt entitled to be admitted." 8 U.S.C. §1225(b)(2)(A). Nothing more is needed.

To be sure, Petitioner was not afforded a hearing to challenge "whether he should be detained during the pendency of his removal proceedings." App. 74; R. Doc. 19 at 11. But *Mullane* "does not ask whether additional procedures might reduce the risk of error." *Make the Road*, 2026 WL 1792978, at \*13. *A fortiori*, it cannot be used to obtain "additional procedures" to adjudicate facts that are irrelevant to the statutory scheme. *Supra*, p. 36.

**2.** Petitioner's procedural due process claim fails even under *Mathews*, which requires courts to balance: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedure used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest." 424 U.S. at 335.

On the first factor, the district court held that Petitioner's "interest in release from detention" "weighs heavily in favor of [his] release." App. 74; R. Doc. 19 at 11. But context matters: "The procedural protections required

by the Due Process Clause must be determined with reference to the rights and interests at stake in the particular case." *Washington v. Harper*, 494 U.S. 210, 229 (1990). And here, the strength of Petitioner's liberty interest is significantly diminished. He certainly "do[es] not have any right—let alone a fundamental right—to be present in the country" pending his removal proceedings. *Lopez-Campos*, 175 F.4th at 760 (Murphy, J., dissenting). Moreover, "an alien detained under §1226(c)"—or §1225(b)(2)(A)—"'has the keys in his pocket' and can 'end[] his detention immediately' by withdraw[ing] his defense ... and return[ing] to his native land." *Parra v. Perryman*, 172 F.3d 954, 958 (7th Cir. 1999). Put simply, Petitioner has no cognizable constitutional interest to be at liberty in the United States when he has no right to be in the United States *at all*.

On the second factor, there is no "severe" risk of erroneous deprivation. App. 74-75; R. Doc. 19 at 11-12. Detaining aliens under §1225(b)(2)(A) without a bond hearing cannot lead to an "erroneous deprivation" because neither flight risk nor dangerousness is relevant to detention under §1225(b)(2)(A). *Supra*, p. 20. Nor is there any risk of error with respect to whether applicants for admission, like Petitioner, fall within §1225(b)(2)(A); the district court conceded that *Avila* resolved that question. App. 69-70; R. Doc. 19 at 6-7.

Finally, on the third factor, "[t]he government's interest in efficient administration of the immigration laws" is "weighty" and courts applying *Mathews* "must weigh heavily in the balance that control over matters of immigration is a sovereign prerogative, largely within the control of the executive and the legislature." *Landon*, 459 U.S. at 34. Here, Congress has determined that aliens covered by §1225(b)(2)(A) are to be detained pending their removal proceedings—full stop. *Avila*, 170 F.4th at 1128. That judgment must "weigh heavily" in any *Mathews* analysis—particularly given the Supreme Court's endorsement of mandatory detention, without bond, under another statutory provision in *Demore*.

Ultimately, the Supreme Court "ha[s] already done whatever balancing is necessary," and upheld mandatory detention without an individualized assessment. *Banyee*, 115 F.4th at 933. *Demore* rejected the argument that requiring "individualized bond hearings" is not excessively burdensome because "when the Government deals with deportable aliens, the Due Process Clause does not require it to employ the least burdensome means to accomplish its goal." 538 U.S. at 528. Likewise, *Banyee* rejected a theory of due process that would require a "multi-factor 'reasonableness' test," as under *Mathews*, to assess whether an alien is "dangerous or posed a flight risk." 115 F.4th at 931, 933. *Banyee* acknowledged that "deciding what

41

process is due ordinarily requires a form of interest balancing," *id.* at 933 (citing *Mathews*, 424 U.S. 319), but held such balancing inapplicable because *Demore* "have already done whatever balancing is necessary," *id.* It was, after all, "the lead dissent in *Demore* [that] advocated for ... 'individual determination[s],'" but "[t]he majority opted for a brightline rule instead." *Id.* In short, this Court held that courts may not use *Mathews* to "impos[e] procedures that merely displace congressional choices of policy." *Landon*, 459 U.S. at 35.

## CONCLUSION

The Court should reverse the district court's order granting Petitioner's writ of habeas corpus.

Respectfully submitted,

BRETT A. SHUMATE
  Assistant Attorney General

DREW C. ENSIGN
  Deputy Assistant Attorney
    General

BENJAMIN HAYES
  Senior Counsel to the Assistant
    Attorney General

ALLISON FRAYER
Senior Litigation Counsel
Office of Immigration Litigation

 *s/ Spencer S. Shucard*
SPENCER SHUCARD
Trial Attorney
Office of Immigration Litigation
Civil Division
U.S. Department of Justice
P.O. Box 878 Ben Franklin Station
Washington, DC 20044
Tel:  (402) 219-3529


July 16, 2026

*Counsel for the Federal Respondents-Appellants*

# CERTIFICATE OF COMPLIANCE

I certify that:

1.     This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because the brief contains 8,746 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

2.     This brief complies with the typeface Fed. R. App. P. 32(a)(5) and the typestyle requirements of Fed. R. App. P. 35(a)(6) because the brief has been prepared in a proportionally spaced typeface using Microsoft Word 365 in Georgia 14-point font.

3.     This brief has been scanned for viruses and is virus-free.

/s/   *Spencer S. Shucard*
SPENCER SHUCARD
Trial Attorney
Office of Immigration Litigation
Civil Division
U.S. Department of Justice
P.O. Box 878 Ben Franklin Station
Washington, DC 20044
Tel:  (402) 219-3529

# CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk

of the Court for the United States Court of Appeals for the Eighth Circuit by

using the appellate CM/ECF system on July 16, 2026.

I certify that all participants in the case are registered CM/ECF users

and that service will be accomplished by the appellate CM/ECF system.

/s/ *Spencer. S. Shucard*
SPENCER S. SHUCARD
Trial Attorney
Office of Immigration Litigation
Civil Division
U.S. Department of Justice
P.O. Box 878 Ben Franklin Station
Washington, DC 20044
Tel: (402) 219-3529