**No. 26-2113**

---

**IN THE UNITED STATES COURT OF APPEALS FOR THE EIGHTH CIRCUIT**

---

ALEKSEI MOROZOV

*Petitioner-Appellee*,

v.

FIELD OFFICE DIRECTOR, U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT; UNITED STATES ATTORNEY, FOR THE DISTRICT OF SOUTH DAKOTA,

*Respondents-Appellants*.

---

On Appeal from the United States District Court for the District of South Dakota

No. 5:26-cv-05030-RAL

---

# RESPONDENTS-APPELLANTS' REPLY BRIEF

---

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

DREW C. ENSIGN
Deputy Assistant Attorney General

BENJAMIN HAYES
Senior Counsel to the Assistant Attorney General

ALLISON FRAYER
Senior Litigation Counsel
Office of Immigration Litigation

ANTHONY J. NARDI
Trial Attorney
Office of Immigration Litigation
Civil Division
U.S. Department of Justice
P.O. Box 878 Ben Franklin Station
Washington, DC 20044
Tel: (202) 880-0258

*Counsel for the Federal Respondents*

## TABLE OF CONTENTS

INTRODUCTION ........................................................................................1

ARGUMENT ........................................................................................ 4

I. Petitioner's substantive due process claim fails under rational basis review. ........................................................................................ 4

A. Petitioner does not have a fundamental right to a bond hearing to justify his detention pending removal proceedings. ..................... 4

B. Petitioner's now-expired parole does not give him greater due process rights. ........................................................................ 10

C. Petitioner's substantive due process claim fails under rational basis review. ........................................................................13

II. Petitioner cannot use procedural due process to obtain a bond hearing to assess factors irrelevant to the statutory scheme. ............20

A. Procedural due process does not entitle Petitioner to a hearing to determine facts that are irrelevant to §1225(b)(2)(A). ................21

B. Petitioner is entitled only to the procedures Congress has provided through statute. ............................................................ 23

C. Petitioner's procedural due process claim fails under *Mathews*. ...28

CONCLUSION ........................................................................................30

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

## TABLE OF AUTHORITIES

**Cases:**

*Avila v. Bondi*,
170 F.4th 1128 (8th Cir. 2026) .......... 1, 21, 23

*Banyee v. Garland*,
115 F.4th 928 (8th Cir. 2024) .......... 18, 25, 29

*Borrero v. Aljets*,
325 F.3d 1003 (8th Cir. 2003) .......... 3, 25

*Buenrostro-Mendez v. Bondi*,
166 F.4th 494 (5th Cir. 2026) .......... 19

*Carlson v. Landon*,
342 U.S. 524 (1952) .......... 15, 16, 17

*Chin Wah v. Colwell*,
187 F. 592 (9th Cir. 1911) .......... 7

*Clark v. Martinez*,
543 U.S. 371 (2005) .......... 25

*Conn. Dep't of Pub. Safety v. Doe*,
538 U.S. 1 (2003) .......... 2, 22

*Demakpor v. Bondi*,
2026 WL 1630226 (S.D. Tex. Apr. 29, 2026) .......... 26

*Demore v. Kim*,
538 U.S. 510 (2003) .......... 2, 6, 7, 9, 13, 15, 16, 17, 19, 26, 29

*Dep’t of State v. Munoz*,
602 U.S. 899 (2024) .......... 1

*DHS v. Thuraissigiam*,
591 U.S. 103 (2020) .......... 3, 23, 27

*Diaz Patino v. Villegas*,
822 F. Supp. 3d 718 (N.D. Tex. Mar. 9, 2026) .......... 27

*Dobbs v. Jackson Women's Health Org.*,
597 U.S. 215 (2022) ........................................................................ 7

*Gagnon v. Scarpelli*,
411 U.S. 778 (1973)......................................................................... 10

*Gap, Inc. v. GK Devel., Inc.*,
843 F.3d 744 (8th Cir. 2016) ........................................................... 6

*Gomez v. Agudelo*,
2026 WL 1676394 (S.D. Tex. Apr. 16, 2026) ........................................ 27

*Harisiades v. Shaughnessy*,
342 U.S. 580 (1952) ........................................................................ 9

*Kaplan v. Tod*,
267 U.S. 228 (1925) ........................................................... 3, 24, 25

*Kleindienst v. Mandel*,
408 U.S. 753 (1972) ........................................................................ 9

*Landon v. Plasencia*,
459 U.S. 21 (1982)...................................................................... 3, 24

*Leng May Ma v. Barber*,
357 U.S. 185 (1958) ....................................................................... 24

*Lopez-Campos v. Raycraft*,
175 F.4th 713 (6th Cir. 2026)...................................................... 8, 19, 29

*Mathews v. Diaz*,
426 U.S. 67 (1976)........................................................................... 2

*Mathews v. Eldridge*,
424 U.S. 319 (1976)......................................................................... 28

*Michael H. v. Gerald D.*,
491 U.S. 110 (1989) ........................................................................21

*Morrissey v. Brewer*,
408 U.S. 471 (1972).................................................................10, 11, 12

*Nishimura Ekiu v. United States*,
142 U.S. 651 (1892) .................................................................. 23, 24

*Parra v. Perryman*,
172 F.3d 954 (7th Cir. 1999) ............................................................... 5

*Prentis v. Manoogian*,
16 F.2d 422 (6th Cir. 1926)................................................................... 8

*Reno v. Flores*,
507 U.S. 292 (1993) ........................................................9, 13, 15, 16, 17, 18

*Sanchez Perez v. Mullin*,
2026 WL 2584426 n.14 (W.D. Mo. Sept. 1, 2026).................................. 25

*Shaughnessy v. United States ex rel. Mezei*,
345 U.S. 206 (1953) .............................................................................. 25

*Sosnava Rodriguez v. Ortega*,
180 F.4th 702 (5th Cir. 2026)............................................................ 17, 19

*Universal Title Ins. Co. v. United States*,
942 F.2d 1311 (8th Cir. 1991)................................................................. 6

*Villiers v. Decker*,
31 F.4th 825 (2d Cir. 2022) ................................................................. 11

*Washington v. Glucksberg*,
521 U.S. 702 (1997)................................................................................. 6

*Washington v. Harper*,
494 U.S. 210 (1990) .............................................................................. 28

*Weitz Co. v. Lloyd's of Lond.*,
574 F.3d 885 (8th Cir. 2009).................................................................... 6

*Wong Wing v. United States*,
163 U.S. 228 (1896) ................................................................................. 8

*Young v. Harper*,
520 U.S. 143 (1997)............................................................................... 10

*Zadvydas v. Davis*,
533 U.S. 678 (2001) ...................................................................13, 14, 15

**Constitutional Provision:**

U.S. Const. amend. VIII .......... 4

**Statutes:**

8 U.S.C. §1182(d)(5) .......... 2, 11

8 U.S.C. §1182(d)(5)(A) .......... 11, 12

8 U.S.C. §1225(b)(2)(A) .......... 4, 5, 8, 12, 18, 20, 21, 24, 26

8 U.S.C. §1231(a)(1)(A) .......... 14

8 U.S.C. §1325(a) .......... 27

Act of May 5, 1892, ch. 60, §5 .......... 7

Act of May 5, 1892, ch. 60, §6 .......... 7

Act of Nov. 3, 1893, ch. 14, §2 .......... 7

Act of Feb. 20, 1907, ch. 1134, §20 .......... 7

**Regulation:**

8 C.F.R. §212.5(e) .......... 11

**Other Authorities:**

H.R. Rep. No. 104-469 (1996) .......... 19, 20

## INTRODUCTION

As this Court rightly held, Congress in 8 U.S.C. §1225(b)(2)(A) mandated detention for all those who illegally entered the United States and were never admitted. *Avila v. Bondi*, 170 F.4th 1128 (8th Cir. 2026). By mandating detention, §1225 represents Congress's substantive policy judgment that both flight risk and dangerousness should be completely irrelevant as to whether applicants for admission should be detained under §1225(b)(2) pending their removal proceedings. That judgment amply survives *substantive* due process review, and *procedural* due process does not entitle Petitioner to a hearing to adjudicate facts that are irrelevant as a matter of statutory law.

Petitioner tries to circumvent the governing substantive due process standards by pointing to his generalized interest in "freedom from detention" as being a putatively enumerated right that triggers heightened scrutiny. But substantive due process demands a "careful description of the asserted fundamental liberty interest" being asserted. *Dep't of State v. Munoz*, 602 U.S. 899, 910 (2024). This Court thus must analyze Petitioner's asserted "fundamental liberty interest" for what it is: the claimed right of an *unadmitted alien* to be at liberty in a country in which he has no right to remain, absent a bond hearing to assess whether he is dangerous or a flight

risk. No such right is enumerated in the Fifth Amendment or "objectively, deeply rooted in this Nation's history and tradition." *Id.* Even if Petitioner's purported right were considered to be enumerated, it still remains subject to rational basis review in light of Congress's sweeping power over immigration and authority to "make[] rules that would be unacceptable if applied to citizens." *Demore v. Kim*, 538 U.S. 510, 521 (2003) (quoting *Mathews v. Diaz*, 426 U.S. 67, 79-80 (1976)) (collecting cases).

Petitioner's now-expired parole does not change the constitutional status of his detention. Parole under 8 U.S.C. §1182(d)(5) is entirely in the discretion of the Secretary of Homeland Security and does not create any cognizable liberty interest, and Petitioner's parole expired more than a year before he was re-detained in any event.

Because Petitioner's claim fails as a matter of substantive due process, he cannot use procedural due process to achieve the same result. It is black-letter law that procedural "due process does not entitle [petitioners] to a hearing to establish a fact that is not material under the [governing] statute." *Conn. Dep't of Pub. Safety v. Doe*, 538 U.S. 1, 7 (2003) (*"Connecticut DPS"*). And that is precisely what Petitioner seeks here—a hearing on factors (flight risk and danger) that are not material under the statutory regime.

Moreover, Petitioner's argument that the entry fiction does not apply has no merit. The Supreme Court has unequivocally held otherwise. In *Kaplan v. Tod*, the Supreme Court applied the entry fiction doctrine to an alien who had been paroled into the United States for *nine years* and was undisputedly in the interior of the United States—where she lived with her naturalized-citizen father. 267 U.S. 228, 230-31 (1925). But the Supreme Court *still* applied the entry fiction to hold that, because she was never *admitted* (rather than being paroled), for due process purposes she must be "regarded as stopped at the boundary line." *Id.*

Petitioner's argument that the entry fiction does not apply to him because he remained in the United States after his parole expired ignores the Supreme Court's clear guidance that "*once an alien gains admission* to our country and begins to develop the ties that go with permanent residence [does] his constitutional status change[]." *Landon v. Plasencia*, 459 U.S. 21, 32 (1982) (emphasis added). Petitioner's additional argument that the doctrine is limited to procedures during removal proceedings is foreclosed by this Court's decision in *Borrero v. Aljets*, 325 F.3d 1003 (8th Cir. 2003), and ignores the logic of the Supreme Court's decision in *DHS v. Thuraissigiam*, 591 U.S. 103, 138 (2020).

## ARGUMENT

### I. Petitioner's substantive due process claim fails under rational basis review.

Petitioner's challenge to the constitutionality of mandatory detention under §1225(b)(2)(A) fails as a matter of substantive due process. Petitioner does not satisfy the applicable test for invoking heightened scrutiny, and his claim fails as a matter of rational basis review. O.B.23-33.

#### A. Petitioner does not have a fundamental right to a bond hearing to justify his detention pending removal proceedings.

1. Petitioner asserts that his substantive due process claim receives heightened scrutiny because the right to "liberty" is enumerated. A.B.13-14, 26. That is wrong. Petitioner relies on authorities stating that "freedom from physical restraint" is the "expressly protected right of liberty," A.B.13 (quotation marks omitted), but Petitioner does not assert an unqualified right to freedom from physical restraint; he acknowledges that he *can* be detained if given a bond hearing that assesses particular factors. That conception of "liberty" is certainly not enumerated in the Fifth Amendment. That is in contrast to the Eighth Amendment, for example, which specifically references bond in its text. *See* U.S. Const. amend. VIII (prohibiting "[e]xcessive bail"). In reality, Petitioner's asserted liberty interest is not "freedom from physical restraint" writ large, but rather freedom for *an alien*

to be at large in a country *in which he has no right to be present* for the duration of his removal proceedings. The Fifth Amendment enumerates no such right.

Indeed, Petitioner's sleight of hand here—trying to leverage a general freedom from detention into a freedom to be at liberty *inside the United States*—is much like the failed attempt at issue in *Department of State v. Muñoz*, 602 U.S. 899 (2024). There, to trigger strict scrutiny the plaintiff tried to define the right at too high a level of generality: *i.e.*, the "fundamental right to marriage." *Id.* at 910. That did not suffice; as the Supreme Court instead recognized the claimed right for what it was: the purported "right to *reside with her noncitizen spouse in the United States*." *Id.* (emphasis in original). Similarly, Petitioner cannot rely on the abstract interest in freedom from detention generally. Instead, as in *Muñoz*, the "where" matters: the asserted right here is thus freedom from detention "*in the United States*." *Id.* After all, "an alien detained under §1226(c)"—or §1225(b)(2)(A)—"'has the keys in his pocket' and can 'end[] his detention immediately' by withdraw[ing] his defense … and return[ing] to his native land." *Parra v. Perryman*, 172 F.3d 954, 958 (7th Cir. 1999).

Petitioner utterly fails to show that the right he does assert satisfies the standard for triggering heightened scrutiny—that it be "objectively, deeply

rooted in this Nation's history and tradition." *Muñoz*, 602 U.S. at 910 (quoting *Washington v. Glucksberg*, 521 U.S. 702, 720-21 (1997)); *see* O.B. 23-24.[1] As the Court explained in *Demore v. Kim*, 538 U.S. 510 (2003), "prior to 1907 there was no provision permitting bail for *any* aliens during the pendency of their deportation proceedings." *Id.* at 523 n.7. Petitioner responds that "[s]ince Congress first created exclusion proceedings in the late 1800s, both federal courts and administrative officials had undisputed authority to release noncitizens during those proceedings." A.B.17. That argument suffers from an obvious category error: The executive branch's *discretionary* authority to grant release does not create an "objectively,

[1] Petitioner argues that the Government has forfeited any argument that the *Glucksberg* framework applies to evaluate his substantive due process claim. Not so. The Government has always argued that the due process clause does not secure Petitioner a right to a bond hearing, and it is not bound by the precise arguments made below when raising that same objection before this Court. As this Court has recognized, "the real question" is whether a "new argument is such as to raise a new *issue*," as "[i]t would be in disharmony with one of the primary purposes of appellate review were [a court of appeals] to refuse to consider each nuance or shift in approach urged by a party simply because it was not similarly urged below." *Weitz Co. v. Lloyd's of Lond.*, 574 F.3d 885, 890 (8th Cir. 2009) (quoting *Universal Title Ins. Co. v. United States*, 942 F.2d 1311, 1314 (8th Cir. 1991)). In any event, this Court has "discretion to consider an issue for the first time on appeal ... when the argument involves a purely legal issue in which no additional evidence or argument would affect the outcome of the case." *Gap, Inc. v. GK Devel., Inc.*, 843 F.3d 744, 748-49 (8th Cir. 2016). This is true, too "where the new issue is encompassed in a more general argument previously raised and no new evidence is presented on appeal." *Id.* at 749.

deeply rooted" *right* to obtain such relief over the Executive's objection in a bond hearing. *Muñoz*, 602 U.S. at 910; *accord Dobbs v. Jackson Women's Health Org.*, 597 U.S. 215, 253 (2022) ("the fact that many States in the late 18th and early 19th century did not criminalize pre-quickening abortions does not mean that anyone thought the States lacked the authority to do so"). Any release was a matter of grace, not right. Petitioner does not contest this key point.

Nor could he. "[P]rior to 1907 there was no provision permitting bail for any aliens during the pendency of their deportation proceedings." *Demore*, 538 U.S. at 523 n.7; *see* Act of Feb. 20, 1907, ch. 1134, §20, 34 Stat. 905. Some earlier provisions had expressly prohibited releasing aliens on bond. *See* Act of May 5, 1892, ch. 60, §5, 27 Stat. 25 (providing that "no bail shall be allowed" to certain Chinese persons); Act of Nov. 3, 1893, ch. 14, §2, 28 Stat. 8 (similar). Others had been silent on the matter. *See, e.g.*, Act of May 5, 1892, §6, 27 Stat. 25-26. Although some courts construed such silence as implicitly authorizing release on bond, *see, e.g.*, *Chin Wah v. Colwell,* 187 F. 592, 594-95 (9th Cir. 1911), there was little or no doubt that Congress could eliminate that authority. As one court of appeals put it, "one in custody charged with being an alien, and with violation of the Immigration Act," "has no primary or inherent right to bail" "pending and during" his deportation

proceedings, and "whatever right in this regard may accrue to him, must be granted to him by Congress." *Prentis v. Manoogian*, 16 F.2d 422, 423 (6th Cir. 1926) (per curiam).

The existence of any right to a bond hearing was thus "a matter of legislative grace rather than fundamental right." *Muñoz*, 602 U.S. at 916 (citation omitted). And especially because such grace was sometimes withheld, the right cannot be said to be so "deeply rooted in this Nation's history and tradition" as to trigger strict scrutiny. *Id.* at 910 (citation omitted). Indeed, the Supreme Court long ago declared it "clear that detention or temporary confinement" was "part of the means necessary to give effect to the provisions for the exclusion or expulsion of aliens." *Wong Wing v. United States*, 163 U.S. 228, 235 (1896). When that history is added to the Supreme Court's longstanding recognition that "the field of immigration" is "an area unsuited to rigorous judicial oversight," it would be "remarkable" if an immigration-detention statute like §1225(b)(2)(A) had to satisfy heightened scrutiny.

Accordingly, because Petitioner's detention does not implicate any fundamental right, his substantive due process challenge to detention under §1225(b)(2)(A) must be evaluated under rational-basis review. *Glucksberg*, 521 U.S. at 728; *see Lopez-Campos v. Raycraft*, 175 F.4th 713, 760-61 (6th

Cir. 2026) (Murphy, J., dissenting) (concluding that unadmitted aliens' "substantive due-process claim[s] fail[] once we articulate a 'careful description' of the[] proposed right" (quoting *Reno v. Flores*, 507 U.S. 292, 302 (1993)).

2. Petitioner's substantive due process claim is not subject to heightened scrutiny even if considered to be "enumerated." The constitutionality of detention cannot be evaluated in a vacuum but must be assessed in the specific context at issue—here, unadmitted aliens—and the Supreme Court's repeated affirmation that the political branches have "plenary power" in the immigration context, *Kleindienst v. Mandel*, 408 U.S. 753, 766 (1972), and that "[s]uch matters are so exclusively entrusted to the political branches of government as to be largely immune from judicial inquiry or interference," *Harisiades v. Shaughnessy*, 342 U.S. 580, 588-89 (1952). It thus follows that "[i]n the exercise" of this sweeping power over immigration, Congress is entitled to "make[] rules that would be unacceptable if applied to citizens." *Demore*, 538 U.S. at 521 (quoting *Mathews*, 426 U.S. at 79-80 (collecting cases). Any claim that detention in the immigration context is subject to heightened scrutiny cannot be reconciled with this caselaw recognizing the political branches' plenary power to regulate in this sphere.

Petitioner does not dispute the political branches' plenary authority in the regulation of unadmitted aliens and never attempts to reconcile his call for heightened scrutiny with this longstanding case law. Instead, Petitioner attacks a straw man, arguing that "Congress's authority in the immigration context does not render it a due-process-free zone." A.B.20. The question is not whether aliens have due process rights, but rather what they are. And the extraordinary power given to Congress and the Executive over immigration is irreconcilable with any assertion that the political branches' decision on the detention of aliens pending removal is subject to heightened scrutiny.

### B. Petitioner's now-expired parole does not give him greater due process rights.

Petitioner's argument that he obtained greater due process rights due to his now-expired parole gets him nowhere. A.B.20-25. Relying exclusively on cases addressing procedural due process claims challenging revocation of parole in the criminal context, Petitioner argues that "conditional release from physical restraint gives rise to a protected interest in continued liberty" so that "revocation of that interest triggers due process protections." A.B.20-21 (citing *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972); *Gagnon v. Scarpelli*, 411 U.S. 778, 782 (1973); and *Young v. Harper*, 520 U.S. 143, 147-49 (1997)). Those cases are nothing like this one. As Petitioner

acknowledges, those cases rested on the premise that parole or probation in the criminal context creates "an implicit promise that parole will be revoked only if [the defendant] fails to live up to the parole conditions." A.B.21 (quoting *Morrissey*, 408 U.S. at 482).

That is not remotely true for immigration parole under 8 U.S.C. §1182(d)(5). The statute provides that parole continues only at the discretion of the Secretary of Homeland Security and "when the purposes of such parole shall, in the opinion of the Secretary of Homeland Security, have been served the alien shall forthwith return or be returned to the custody from which he was paroled." 8 U.S.C. §1182(d)(5)(A); *see also* 8 C.F.R. §212.5(e). The statute's unequivocal grant of discretion to the Secretary to revoke parole forecloses any argument that parole under §1182(d)(5)(A) creates a cognizable liberty interest for purposes of the due process clause. Indeed, Petitioner identifies no case from the Supreme Court or this Court that has held that release on §1182(d)(5)(A) parole creates a protected liberty interest.[2] Nor does Petitioner identify any "conditions" he was required to live up to maintain his parole. *See* A.B.2-3, 25. He says he was released "on

---

[2] The out-of-circuit decision he cites—*Villiers v. Decker*, 31 F.4th 825 (2d Cir. 2022)—did not involve release from parole under §1182(d)(5)(A), but rather an alien who had been admitted to the United States. *See id.* at 827. That case has no relevance here.

the condition that he continue to participate in removal proceedings," A.B.23, but that is false. Petitioner had no choice but to participate in his removal proceedings.

Even if Petitioner's release on §1182(d)(5)(A) parole created a liberty interest, any such liberty interest would not be "fundamental," and its deprivation by detention under §1225(b)(2)(A) would not be subject to heightened review, for the same reasons that his interest in being "free of physical restraint," A.B.13, is not. *Supra*, pp. 4-10.

Regardless, Petitioner's parole was not terminated by his re-detention. As Petitioner acknowledges, his one-year term of "parole expired on February 3, 2024," A.B.24—more than a year before he was re-detained. O.B. 12-13, 32. So even if §1182(d)(5)(A) parole created an "implicit promise" that Petitioner would remain free absent violating some (unknown) conditions on his release, that promise expired on its own terms long before his detention in November 2025. That is nothing like the circumstances in *Morrissey*, *Gagnon*, or *Young*. It makes no difference, moreover, that the government did not immediately re-detain Petitioner upon the expiration of his parole. A.B.24-25.

Petitioner also argues that the "exten[sion] [of] his work authorization" and "schedul[ing] [of] another in-person removal hearing" somehow

"doubled down" on an "implicit promise" that "his conditional liberty would continue because of his compliance." A.B.24. They did no such thing, and Petitioner offers no authority that a grant of work authorization (much less the continuation of removal proceedings) after parole has expired can create a liberty interest that parole itself is incapable of creating.[3]

### C. Petitioner's substantive due process claim fails under rational basis review.

1. Petitioner's substantive due process claim is thus subject to rational basis review, and *Demore* and the cases on which it relied make crystal clear that mandatory detention is consistent with due process without individualized assessments for flight risk or dangerousness. 538 U.S. at 514; *Flores*, 507 U.S. at 306 (recognizing Congress' "authority to detain aliens suspected of entering the country illegally pending their deportation hearings"); *see* O.B.25-28.[4]

Relying on *Zadvydas v. Davis*, 533 U.S. 678 (2001), Petitioner argues that detention under §1225(b)(2)(A) is unconstitutional absent a "special

---

[3] Petitioner also argues he was released on parole "pending a final decision on his asylum application," A.B.23, but that is belied by his own acknowledgment that his parole *preceded* the filing of his asylum application. A.B.1-2.

[4] Petitioner's argument that the Government has "forfeited the argument that rational basis review applies" is wrong for the reasons already given. *Supra*, note 1.

justification" that outweighs the alien's liberty interest. A.B.26 (quoting *Zadvydas*, 533 U.S. at 690-91). But *Zadvydas* dealt with aliens who had been *admitted* to the United States as lawful permanent residents and already ordered removed. 533 U.S. at 682. Whatever may be required to justify detention of aliens in that position does not extend to aliens, like Petitioner, who have never been admitted to the United States. Indeed, *Zadvydas* emphasized that it was "deal[ing] … with aliens who were admitted to the United States but subsequently ordered removed" and that "[a]liens who have not yet gained initial admission to this country *would present a very different question*." 553 U.S. at 682 (emphasis added).

Indeed, *Zadvydas* undermines Petitioner's argument that substantive due process requires a hearing to assess flight risk and dangerousness before detention may be authorized. That case addressed a due process challenge to the length of detention under §1231, which authorizes the detention of aliens with final orders of removal pending removal. 8 U.S.C. §1231(a)(1)(A), (2)(A), (6). The Supreme Court concluded that *indefinite* detention would raise due process concerns, and so it read into §1231 a "reasonableness" limitation on the length of detention and adopted a presumption that detention becomes unreasonable after 6 months. *Zadvydas*, 533 U.S. at 688-701. Critically, *Zadvydas* never questioned the constitutionality of detention

without a bond hearing under §1231, even though §1231—unlike §1226(c)—is not limited to criminal and national security threat aliens. Indeed, even as construed by *Zadvydas*, §1231 does not *ever* require a bond hearing—only an assessment of the individualized prospect of removal. Thus, *Zadvydas* directly contradicts Petitioner's theory that immigration-based detention always requires individualized consideration of flight risk and dangerousness.

So do the Supreme Court's other cases. As the Government explained, the Supreme Court has consistently upheld the detention of categories of unadmitted aliens pending their removal proceedings without applying any kind of heightened scrutiny. OB.23-29 (discussing *Demore*, 538 U.S. 510; *Carlson v. Landon*, 342 U.S. 524 (1952); and *Flores*, 507 U.S. 292).

Trying to evade *Demore*, Petitioner mischaracterizes it as being relevant to the detention only of a "'limited class' of noncitizens with certain criminal convictions," A.B.29, because the Court's opinion recounted the "voluminous record" before Congress demonstrating criminal aliens' dangerousness and flight risk. A.B.29-39; *see also id*. at 27. That grossly misreads *Demore*. To be sure, *Demore* noted the evidence that "failure to detain" criminal aliens inhibited their deportation, 538 U.S. at 519, but the Court's *legal analysis* did not turn on the evidentiary record. Instead, the

Court based its holding on established precedent recognizing Congress's sweeping power to regulate in the context of immigration, *id*. at 521-22, and "th[e] Court's longstanding view that the Government may constitutionally detain deportable aliens"—not just criminal aliens—"during the limited period necessary for their removal proceedings," *without* individualized assessments of flight risk or dangerousness, *id*. at 523-26 (discussing *Carlson*, 342 U.S. 524, and *Flores*, 507 U.S. 292).

Indeed, *Demore*'s reliance on *Carlson* and *Flores* refutes Petitioner's argument that *Demore* requires a voluminous evidentiary record to justify alien detention pending removal proceedings absent an individualized assessment. *Carlson* addressed the "detention of aliens who were deportable because of their participation in Communist activities," and the Court held that the Government would detain those aliens, without an individualized assessment, solely "*by reference to the legislative scheme*." *Demore*, 538 U.S. at 524-25 (quoting *Carlson*, 342 U.S. at 543) (emphasis added). That was true, moreover, even though one of the aliens in *Carlson* had "a specific finding of nondangerousness." *Demore*, 538 U.S. at 525. And *Flores* emphasized that Congress may employ "reasonable presumptions *and generic rules*" when legislating with respect to aliens. 507 U.S. at 313 (emphasis added).

Petitioner's effort to evade *Carlson* and *Flores* fares no better. He acknowledges that in *Carlson* the Court upheld detention on a category-wide basis by "reference to the legislative scheme." 342 U.S. at 543; *see* A.B.33-34. He insists, however, that that detention was permissible only because Communists were deemed to be "categorically dangerous." A.B. 33-34. That does not help him. The fact that the determination was made on a *categorical*, not individualized, basis is the critical point. Indeed, one of the aliens in *Carlson* had "a specific finding of nondangerousness." *Demore*, 538 U.S. at 525. Although *Carlson* stated that "purpose to injure could not be imputed generally to all aliens subject to deportation," A.B. 34 (quoting *Carlson*, 342 U.S. at 538), that language "ha[d] no bearing on whether illegal aliens may be detained pending their removal proceedings." *Sosnava Rodriguez v. Ortega*, 180 F.4th 702, 743 (5th Cir. 2026) (Wilson, J., dissenting). Just as Congress can detain Communist aliens based on a categorical determination that they are dangerous, it can detain applicants for admission on a categorical determination that they are flight risks.

As to *Flores*, Petitioner argues that "the custody scheme" there did "require[] individualized determinations of flight risk and danger." A.B.36. True, a determination was needed about each juvenile alien to ensure "accurate application of the regulation," 507 U.S. at 313, just like an

individualized assessment is needed under §1225(b)(2)(A) to determine that any individual alien is an applicant for admission who is not "clearly and beyond a doubt entitled to be admitted." 8 U.S.C. §1225(b)(2)(A). But "the particularization and individuation [went] no further than this" in *Flores*, and it need go no further here. In each case, detention is governed by "reasonable presumptions and generic rules." 507 U.S. at 313-14.

This Court's decision in *Banyee v. Garland*, 115 F.4th 928 (8th Cir. 2024), confirms the lawfulness of Petitioner's detention. O.B.28. As with *Demore*, Petitioner tries to limit *Banyee* to its facts. A.B.30, 32. But *Banyee* articulated a legal rule sweeping more broadly than the specific context of detention under 8 U.S.C. §1226(c)—it recognized the Supreme Court's "longstanding view that the [g]overnment may constitutionally detain deportable aliens during the limited period necessary for their removal proceedings" because "Congress may make rules as to aliens that would be unacceptable if applied to citizens." 115 F.4th at 931 (quoting *Demore*, 538 U.S. at 522, 526). That same "longstanding" rule controls here.

2. Petitioner's detention under §1225(b)(2)(A) easily satisfies rational basis review because "[i]t *categorically* 'serves the purpose of preventing [removable aliens] from fleeing prior to or during their removal proceedings, thus increasing the chance that' *all* 'will be successfully

removed.'" *Lopez-Campos*, 175 F.4th at 760 (Murphy, J., dissenting); *see* O.B.29. And that congressional "choice … was firmly supported by the evidence in 1996 and remains a rational policy today." *Sosnava Rodriguez*, 180 F.4th at 744 (Wilson, J., dissenting); *id.* at 743 ("Contemporary congressional findings uniformly suggested that illegal aliens frequently evaded removal when prematurely released from custody"); *see* O.B.29.

Petitioner nitpicks the Office of Inspector General ("OIG") report the Government cited (O.B.29), because it "focuses on noncitizens with final removal orders," and "attributes" the 11 percent "rate to multiple factors." A.B.32. He cannot, however, dispute its basic contention that "detention is key to deportation." Nor can he seriously dispute that aliens frequently abscond rather than present at their removal proceedings, and that this problem "exists today on a much larger scale" than it did in 1997. *Buenrostro-Mendez v. Bondi*, 166 F.4th 494, 508 (5th Cir. 2026).

Regardless, the OIG report is hardly the only evidence in the congressional record. The committee report accompanying the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA") explained that "[a] chief reason why many deportable aliens are not removed from the United States is the inability of the INS to detain such aliens through the course of their deportation proceedings." H.R. Rep. No. 104-

469 at 123 (1996). Detention was thus essential, because without detention "many aliens simply fail to appear for their deportation hearing." *Id.* at 122. That conclusion was supported by "[a] 1989 study by the General Accounting Office [which] estimated that 27 percent of deportation proceedings are closed because aliens fail to appear for their hearings," and noted that "[t]he 'no show' rate [] exceed[ed] 50 percent in venues such as New York, Los Angeles, and Miami." *Id.* These rates of abscondment remained despite widespread use of bond. "Bond," the committee report concluded, "do[es] not have a strong deterrent effect against no-shows."

* * *

Petitioner's substantive due process challenge to detention under 8 U.S.C. §1225(b)(2)(A) thus fails under longstanding Supreme Court precedent. Section 1225(b)(2)(A) is subject to rational basis review, and it easily satisfies that standard. *Id.*

## II. Petitioner cannot use procedural due process to obtain a bond hearing to assess factors irrelevant to the statutory scheme.

Petitioner's substantive due process claim thus fails and that doctrine cannot secure him the bond hearing to assess flight risk and dangerousness that he seeks. Because he has no *substantive* right—either statutory or constitutional—to be detained only if determined to be a flight risk or

dangerous, he has no *procedural* due process right to a bond hearing to adjudicate flight risk and dangerousness. Indeed, the longstanding entry fiction forecloses any effort on Petitioner's part to secure additional procedures through the due process clause not provided by Congress.

### A. Procedural due process does not entitle Petitioner to a hearing to determine facts that are irrelevant to §1225(b)(2)(A).

1. *Connecticut DPS*, 538 U.S. 1, held that "Plaintiffs who assert a right to a hearing under the Due Process Clause must show that the facts they seek to establish in that hearing are relevant under the statutory scheme." *Id.* at 8. If "the facts they seek to establish in that hearing" are *not* relevant to the statutory scheme, but instead the claim is that the Due Process Clause *makes them* relevant, then the claim "'must ultimately be analyzed' in terms of substantive, not procedural, due process." *Id.* at 7-8 (quoting *Michael H. v. Gerald D.*, 491 U.S. 110, 120 (1989) (plurality opinion)); *see* O.B. 19-20.

Here, *Connecticut DPS*'s application is straightforward. Petitioner indisputably has no *statutory* right to a bond hearing to assess his dangerousness or flight risk. *See Avila*, 170 F.4th 1128. And for the reasons explained above, the due process clause does not secure a substantive *constitutional* right to such a hearing, either. Therefore, Petitioner cannot use *procedural* due process to secure that hearing, as "any hearing on

current dangerousness [or flight risk would be] a bootless exercise." *Connecticut DPS*, 538 U.S. at 7-8.

2. Petitioner does not dispute *Connecticut DPS*'s holding that procedural due process cannot be used to secure a hearing (or other additional procedures) to adjudicate facts that are irrelevant as a matter of substantive law. AB.39. Instead, he argues that his case falls outside *Connecticut DPS* because "Doe did not assert any statutory or constitutional basis why he could not have been placed on the registry even if additional process proved he was not currently dangerous." AB.39. "Unlike Doe," Petitioner "argued that the Constitution requires his re-detention under 1225(b)(2)(A) serve an adequate purpose … and that there be adequate procedures to test that purpose." AB.39-40.

In other words, Petitioner appears to acknowledge that his asserted procedural due process right to "adequate procedures" is premised on the success of his substantive challenge to detention under §1225(b)(2)(A) without assessing flight risk or dangerousness (the "adequate purpose"). AB.40 (noting that Petitioner brings "substantive and procedural challenges"). But as the Government has explained, Petitioner's substantive due process claim is meritless, *supra*, pp. 4-21, so flight risk and dangerousness remain irrelevant to the statutory scheme. *See* OB.21-22.

Therefore, as *Connecticut DPS* holds, Petitioner cannot use *procedural* due process to secure an adjudication that is irrelevant as a matter of substantive law.

### B. Petitioner is entitled only to the procedures Congress has provided through statute.

Even if Petitioner had a viable procedural due process claim remaining, it is foreclosed by the longstanding entry fiction doctrine. As the Government has explained, for "more than a century," the rule has been that for aliens who have never "'been admitted into the country pursuant to law,'" '"the decisions of executive and administrative officers, acting within powers expressly conferred by Congress, are due process of law.'" *Thuraissigiam*, 591 U.S. at 138 (quoting *Nishimura Ekiu v. United States*, 142 U.S. 651, 660 (1892)). Because Petitioner has indisputably never been admitted to the United States, he has no procedural due process rights beyond those afforded by the Immigration and Nationality Act ("INA")—which does not include a bond hearing for applicants for admission. *See* 8 U.S.C. §1225(b)(2)(A); *Avila*, 170 F.4th at 1134-38.

Petitioner agrees that aliens who are encompassed by the so-called "entry fiction" have no procedural due process rights beyond those provided by statute. A.B.43. He also acknowledges that he was subject to the entry fiction when paroled into the United States. A.B.44. That much is compelled

by *Kaplan*, 267 U.S. 228, which held that a child paroled into the care of relatives *for nearly nine years*—but never admitted—must be "regarded as stopped at the boundary line" and "had gained no foothold in the United States." *Id*. at 230-31; *see* O.B.36 (discussing *Kaplan*).

However, Petitioner argues that he has escaped the entry fiction because he continued to live in the United States after his parole expiration and thus effected an "entry." A.B.42-43. That is wrong. There is no dispute that Petitioner was never admitted to the United States, and the Supreme Court has been clear that an alien's presence in the country "*pending determination of his admissibility*" does not "legally constitute an entry though the alien is physically within the United States." *Leng May Ma v. Barber*, 357 U.S. 185, 188 (1958) (emphasis added). So while Petitioner may believe that being *physically present* in the country after parole matters, the Supreme Court has instead drawn the line at admission: only "*once an alien gains admission* to our country and begins to develop the ties that go with permanent residence [does] his constitutional status change[]." *Plasencia*, 459 U.S. at 32; *see also Nishimura Ekiu*, 142 U.S. at 660 (aliens who have "no[t] even been admitted into the country pursuant to law … the decisions of executive or administrative officers, acting within powers expressly

conferred by congress, are due process of law"), and *Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206, 215 (1953)); O.B.35-36.

Petitioner separately urges that the entry fiction "affects procedural rights regarding admission and nothing more," including procedures to evaluate detention. A.B.43-44. That argument is foreclosed by this Court's precedent in *Borrero v. Aljets*, 325 F.3d 1003 (8th Cir. 2003). There, this Court applied the entry fiction to reject a due process challenge to the detention of an alien who was paroled into the United States and, therefore, "had not effected an entry into the United States." *Id.* at 1008. Applying *Mezei* and the entry fiction, the Court held that the federal government unquestionably had "the power … to detain an alien who is stopped at the border," including if then released on parole. *Id.*[5] Notably, several cases applying the entry fiction did involve aliens in detention. *See Mezei*, 345 U.S. at 213; *Kaplan*, 267 U.S. at 229.

---

[5] *Borrero* held, as an initial matter, that *Zadvydas*'s interpretation of §1231 does not extend to *unadmitted* aliens. 325 F.3d at 1005-07. In *Clark v. Martinez*, 543 U.S. 371 (2005), the Supreme Court rejected that statutory holding, but it did not "overrule *Borrero*'s holding as to the separate due process claim." *Sanchez Perez v. Mullin*, 2026 WL 2584426, at *7 n.14 (W.D. Mo. Sept. 1, 2026). Indeed, this Court cited *Borrero*'s due process holding favorably in *Banyee*, 115 F.4th at 932.

Petitioner objects that such cases (and others) do not involve the *exact* fact-pattern of his case. A.B.46. That is not how legal principles or judicial holdings work; courts must apply the *principles* announced in precedential decisions regardless of immaterial differences in fact pattern. And, as described above, Petitioner falls squarely within the entry fiction recognized by Supreme Court and Eighth Circuit precedent. Moreover, the distinction between "removal" and "detention" Petitioner tries to draw is entirely artificial—the detention at issue is detention *pending removal proceedings*. *See* 8 U.S.C. §1225(b)(2)(A) (alien "shall be detained for a proceeding under section 1229a of this title"). Indeed, as the Supreme Court has explained, "[d]etention is necessarily a part of this deportation procedure," which "'would be vain if those accused could not be held in custody pending the inquiry into their true character.'" *Demore*, 538 U.S. at 524 (citations omitted).

Detention under §1225(b)(2)(A) thus arises from and is intimately bound up with the removal proceedings themselves. Although Petitioner purports to identify a purported "growing consensus" in his favor (A.B.47), multiple federal courts have recognized that the entry fiction applies more broadly and covers challenges by unadmitted aliens to detention pending their removal proceedings. *See Demakpor v. Bondi*, 2026 WL 1630226 (S.D.

Tex. Apr. 29, 2026); *Gomez v. Agudelo*, 2026 WL 1676394 (S.D. Tex. Apr. 16, 2026); *Diaz Patino v. Villegas*, 822 F. Supp. 3d 718 (N.D. Tex. Mar. 9, 2026).

Petitioner objects that applying the entry fiction to the detention context would be "wholly untethered from its purpose." A.B.45. That argument is foreclosed by *Borrero*, and it is wrong on its own terms. Indeed, as Petitioner acknowledges, the entry fiction "serves Congress's 'sovereign prerogative' of governing *admission* to this country.'" A.B.45 (quoting *Landon*, 459 U.S. at 32) (emphasis added). Ultimately, Petitioner's theory would constitutionalize the perverse dynamic this Court already rejected as a matter of statutory law. If, as Petitioner asserts, the principle of *Thuraissigiam* applies only to aliens at the border pre-entry—not to those who deliberately evade inspection and enter unlawfully without admission—then aliens who violate federal law would enjoy *greater* constitutional protections than those who comply with it. The Constitution should not be read to allow aliens to adversely possess additional due process rights by virtue of unlawfully entering the United States—a criminal offense. 8 U.S.C. §1325(a).

### C. Petitioner's procedural due process claim fails under *Mathews*.

The preceding discussion dispenses with Petitioner's due process claims, both as a matter of substantive and procedural due process, so the Court need not ever address the district court's application of the factors under *Mathews v. Eldridge*, 424 U.S. 319 (1976). Petitioner argues that the Supreme Court and this Court have applied *Mathews* in the immigration context "to assess what process is necessary" for a deprivation of liberty, A.B.48-49, but none of those cases purports to displace *Connecticut DPS*'s rule that no process is due to adjudicate irrelevant facts.

Regardless, the district court's application of those factors is error. *See* O.B.39-42. On the first factor, Petitioner repeats his prior error of seeking to define his liberty interest at too high a level of generality, contrary to the Supreme Court's admonition that "[t]he procedural protections" required "must be determined with reference to the rights and interests at stake *in the particular case*." *Washington v. Harper*, 494 U.S. 210, 229 (1990) (emphasis added). That is not a context-free inquiry, as Petitioner suggests. A.B.51. And when evaluated in context and at the proper level of generality—*i.e.*, Petitioner's putative entitlement to be at liberty in a country in which he has no right to be in at all—Petitioner's liberty interest is significantly diminished. O.B.40.

Petitioner fares no better on the second factor. He asserts that the risk of erroneous deprivation is "severe," A.B.51, but that argument is premised on his flawed substantive due process argument that the Constitution prohibits his detention without a determination that he is a flight risk or dangerous. *See* A.B.51. The fact that Petitioner was previously determined not to be a flight risk or dangerous as part of his now-expired parole does not make those factors constitutional prerequisites before he may be re-detained. *Supra*, pp. 10-13 (discussing Petitioner's parole-based arguments).

Finally, Petitioner does not dispute that "the government has valid interests in enforcing immigration law." A.B.52. Petitioner questions that *his* detention serves that interest, but Congress has already made the policy choice in §1225(b)(2)(A) that detention under that statute "*categorically* 'serves the purpose of preventing [inadmissible aliens] from fleeing prior to or during their removal proceedings, thus increasing the chance that' *all* 'will be successfully removed.'" *Lopez-Campos*, 175 F.4th at 760 (Murphy, J., dissenting). Moreover, Petitioner's argument that a bond hearing is not "unduly burdensome," A.B.52, is foreclosed by *Demore*, which rejected the argument that requiring "individualized bond hearings" is not excessively "burdensome." 538 U.S. at 528. As *Banyee* held, the Supreme Court "ha[s]

already done whatever balancing is necessary," 115 F.4th at 933, and Petitioner cannot second-guess that substantive determination through the *Mathews* balancing test.

## CONCLUSION

The Court should reverse the district court's order granting Petitioner's writ of habeas corpus.

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General

DREW C. ENSIGN
Deputy Assistant Attorney General

BENJAMIN HAYES
Senior Counsel to the Assistant Attorney General

ALLISON FRAYER
Senior Litigation Counsel
Office of Immigration Litigation

*s/ Anthony J. Nardi*
ANTHONY J. NARDI
Trial Attorney
Office of Immigration Litigation
Civil Division
U.S. Department of Justice
P.O. Box 878 Ben Franklin Station
Washington, DC 20044
Tel: (202) 880-0258

September 30, 2026

*Counsel for the Federal Respondents-Appellants*

**CERTIFICATE OF COMPLIANCE**

I certify that:

1. This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because the brief contains 6,371 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

2. This brief complies with the typeface Fed. R. App. P. 32(a)(5) and the typestyle requirements of Fed. R. App. P. 35(a)(6) because the brief has been prepared in a proportionally spaced typeface using Microsoft Word 365 in Georgia 14-point font.

3. This brief has been scanned for viruses and is virus-free.

/s/ *Anthony J. Nardi*
ANTHONY J. NARDI
Trial Attorney
Office of Immigration Litigation
Civil Division
U.S. Department of Justice
P.O. Box 878 Ben Franklin Station
Washington, DC 20044
Tel: (202) 880-0258

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Eighth Circuit by using the appellate CM/ECF system on September 30, 2026.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

/s/ *Anthony J. Nardi*
ANTHONY J. NARDI
Trial Attorney
Office of Immigration Litigation
Civil Division
U.S. Department of Justice
P.O. Box 878 Ben Franklin Station
Washington, DC 20044
Tel: (202) 880-0258